## GERALD EDWARD TURNER *v.* STATE OF MARYLAND

[No. 210, September Term, 1968.]

*Decided May 23, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*James C. Cawood, Jr.,* for appellant.

*Henry J. Frankel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Richard J. Kinlein, State's Attorney for Howard County,* and *Ronald N. Naiditch, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The appellant, Gerald Edward Turner, and Stephen A.

Johnson were convicted, in separate trials, of first degree murder. Johnson's trial was held in the Circuit Court for Anne Arundel County. Turner's case was removed to the Circuit Court for Howard County, where he was subsequently tried and convicted by a jury. Judge James Macgill sentenced him to life imprisonment.

The record indicates that Milton Finkelstein was murdered during the course of being robbed early in the evening of December 22, 1966, just outside his grocery store in Anne Arundel County. At Turner's trial, John Wesley Pindell, a friend of Turner's, was called by the State and, over objection, was permitted to testify that early one morning in the latter part of November, 1966, while waiting for a ride to work, he was joined by Turner and Johnson. He stated that Turner told him that Mr. Finkelstein drew money from the bank in order to cash customers' welfare checks on the sixth of every month; that Turner said "he needed money and everything"; and proposed to "rob Finkelstein." He further testified that about three weeks later he again saw Turner and Johnson at the Dixie Hotel in Annapolis and "the same conversation came up about Finkelstein and these checks he cashed."

In this appeal it is first contended that such testimony "was too remote in time, and did not identify which Finkelstein was referred to, there being two who operated stores in the immediate vicinity." It is argued that under the holding of this Court in *Gilchrist v. State,* 2 Md. App. 635, the admission of such testimony constituted reversible error. We disagree.

In *Gilchrist,* the accused was charged with robbing a Seven-Eleven store. We held that the admission of a statement by him some seven months previously that he could solve his financial problems "by robbing a McDonald's or the Hot Shoppes" constituted "evidence which simply indicates a disposition on the part of the accused to commit a crime" and such evidence "is ordinarily excluded as irrelevant and untrustworthy since it tends to deflect the mind of the trier of facts from

the single issue of guilt or innocence of the particular crime under consideration." On the other hand, we recognized, at p. 637, that "evidence of a plan, design or scheme which has been put into execution is relevant to the issue of guilt or innocence and, therefore, is admissible if it tends, by reasonable inference, to establish the commission of the crime charged. Wharton, *Criminal Evidence*, Vol. 1, § 179, p. 354; Underhill, *Criminal Evidence*, Vol. 1, § 212, p. 502." In the case at bar, Turner's statements were made within a few weeks of the execution of the crime and constituted evidence of a plan, design or scheme to commit the very crime with which he was charged. The fact that the crime was committed on the twenty-second of the month rather than the sixth of the month and that there were two store owners named Finkelstein would go to the weight of the evidence but not, in this instance, to its admissibility. We find no error in its admission.

In the course of Turner's trial, Johnson was called as a State's witness on the first day of trial. After being advised by the court, out of the presence of the jury, of his right to refuse to answer questions that would incriminate him, and after being permitted to confer with his own attorney, he declined to testify and was excused. On the second day of the trial, he was again called as a State's witness and, after again being advised of his right to decline to answer questions that would incriminate him, he agreed to testify. Johnson thereupon stated that about 7:30 p.m. on December 22, 1966, he and Turner left a parked school bus which he had driven that day, proceeded to Turner's home where Turner procured a piece of two by four lumber and then went to Bea's Food Market which was owned and operated by Milton Finkelstein. They "waited until the store closed" at which time "we was counting on robbing him." According to Johnson, when the store closed, he "stayed in the alley" while Turner "went around to the side of the building." When he, thereafter, heard a groan he "came out of the alley" saw "Mr. Finkelstein laying on

the ground," Turner was "standing beside him" and the two by four board" was laying beside him." Johnson then testified: "I asked him was he dead. Mr. Turner told me dead men don't talk."

It is contended on behalf of Turner that the State should not have been permitted to recall Johnson after he had indicated his refusal to testify the day before and had been excused because Johnson, in the meantime, may have talked with other witnesses for the State who had seen sequestered. The court refused to inquire of Johnson whether he had talked with sequestered witnesses for the asserted reason that Johnson had given no testimonial evidence the day before concerning the facts of the case (having merely declined to testify); that the purpose of sequestration is to prevent comparison of testimony among witnesses; and that here there was no testimony by Johnson to be compared with the sequestered witnesses. The trial judge did, however, offer Turner's trial counsel the opportunity to question Johnson in this regard but counsel declined to make such inquiry on the ground that he did not desire to ask such questions in the presence of the jury.

We find no fault in the action taken by the trial judge and no merit in Turner's further contention that, in any event, it was an abuse of the court's discretion to permit Johnson to be recalled. The overall conduct of a trial is subject to the sound direction of the trial judge. This Court will not interfere with that direction unless there is a clear abuse of the trial judge's discretion in this regard which results in prejudice to the accused. *Hurley v. State*, 6 Md. App. 348, 352; *Scott v. State*, 2 Md. App. 705. Here counsel for the accused was afforded an opportunity to make the inquiry he desired and, as a matter of trial tactics, declined. In the circumstances, we, find no abuse by the trial judge of his discretionary rights to have such inquiry made in the presence of the jury or his right to permit the recall of the witness.

It is finally contended that counsel for Turner "should have been permitted to question Johnson about self-in-

crimination outside the presence of the jury." We cannot find from an examination of the record that Turner's trial counsel was denied permission to question Johnson concerning his privilege against self-incrimination. In any event, the right is a personal one to be exercised by the witness being interrogated and as we said in *Poling v. State,* 6 Md. App. 45, 47: "Since the privilege is personal to the witness the defendant may not assert error on appeal if the witness is compelled to testify and in doing so implicates the defendant * * *." See also, *Hopkins v. State,* 5 Md. App. 284.

*Judgment affirmed.*