WILLIAM OLIVER GARDNER *v.* STATE OF MARYLAND

[No. 119, September Term, 1969.]

*Decided February 12, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*John D. Hackett* (*Nelson R. Kandel* on the brief) for appellant.

*John J. Garrity, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Frederick K. Grant, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, William Oliver Gardner, was tried on January 27, 1969 in the Criminal Court of Baltimore by a jury, Judge Basil A. Thomas presiding, for robbery with a deadly weapon of the Union Trust Company's branch office on North Avenue in Baltimore. The jury found appellant guilty and, after denial of a motion for a new trial, he was sentenced to twenty years under the supervision of the Department of Correctional Services. Appellant presents five questions. They are:

1. Did the trial court err in permitting the recall of a State witness?

2. Was the in-court identification of appellant tainted?

3. Did the trial court err in denying a motion for acquittal?

4. Was appellant, under the totality of the circumstances, afforded a fair trial?

5. Were not the indicting and hearing juries unconstitutionally invested?

Appellant, by counsel on appeal, abandoned his fifth contention dealing with the constitutionality of the composition of the juries.

Dennis Wicklein testified that on May 10, 1968, he was the bank manager of the Union Trust Company's branch office on North Avenue; that at approximately 9:30 a.m. that morning he engaged in a conversation with Jerome Glass, a customer of the bank; that after Jerome Glass left the bank he noticed a commotion in the bank; that two men, wearing stocking masks, ordered the employees and customers of the bank to get down on the floor and proceeded to rob the bank of $22,618. Mr. Wicklein stated that subsequent to the robbery he selected a photograph of Thomas Lucas [1] as one of the robbers from a group of photographs shown him by the police. He stated that this identification was based upon Lucas' stature rather than his facial appearance as the robbers' faces were covered at the time of the robbery. At trial Mr. Wicklein repeated his selection of Lucas' photograph from a group of photographs shown him on the witness stand. A defense motion to strike Wicklein's testimony on the grounds of improper identification was denied.

Sandra Barnes, a customer in the bank at the time of the robbery, was pushed to the floor by one of the robbers. She was unable to identify either of them as they wore masks, but testified that one of the men carried a sawed-off shotgun.

Jerome Glass, called as a witness by the State, testified that on May 10, 1968, at approximately 9:30 a.m.,

---

1. Codefendant Lucas was granted a severance before trial.

he had gone to the Union Trust Company's branch office on North Avenue to make a deposit. As he was entering, he saw two men outside the bank, one of whom he knew as Lucas, and that he stopped to talk with Lucas briefly. He had seen the other man on previous occasions in Lucas' company and had heard Lucas call him "Gardner." After making his deposit and talking to Mr. Wicklein, he left the bank and engaged in another short conversation with Lucas, who was still outside with his companion. As he entered his automobile to drive off, he observed the two men enter the bank. Mr. Glass made an in-court identification of a photograph of the man he knew as Lucas. The photograph was the same one Mr. Wicklein had selected as being a photograph of one of the robbers. On redirect examination, Glass was asked to state whether he could identify anyone in the courtroom as the man he had seen with Lucas. He asked a spectator to rise, but then stated he was not the man. The State then asked that Mr. Glass be sequestered and moved for an adjournment for the day, which was granted.

When court reconvened the next day, the State moved to recall Mr. Glass as a witness. The defense objected and the court took testimony out of the presence of the jury for the purpose of a determination on the motion to recall. Glass was called as the first witness on the motion. He identified appellant who was seated on the first bench in the courtroom as the man he had seen outside the bank with Lucas just prior to the robbery. He stated that although he had seen appellant leave the courtroom in the custody of officers upon adjournment the previous day, his identification of Gardner was based upon his independent recollection of him as a friend of Lucas with whom he was well acquainted. Glass stated that when trial adjourned the previous day he had been taken upstairs to the State's attorney's office where he was told to contact his attorney and have him come down to the courthouse as the State was trying to determine why he would not testify to Gardner's identity when he had previously picked his photograph from a series of pictures. He later

conferred with the State's attorney after the arrival of his own attorney.

When the court asked Glass the reason why he had given inconsistent testimony on the previous day, he testified that before coming to court that morning he had received a telephone call at his place of business and was told that "* * * if I came down here and identified Gardner my daughter would be killed before the night was over. He knew the school and what she looked like and he even knew the babysitter and also the police car that was in the area daily. They knew the car and knew it by number, and said, 'The police can't live with your daughter but you will have to live with her'."

The witness on cross-examination testified that previous threats had been made to him and his daughter and that it was only after the State's attorney's office agreed to assign a definite police detail to guard his daughter that he had agreed to identify the appellant. The defense then called Officer McDowell who testified that after adjournment of court the previous day he had placed handcuffs on the appellant when he was removed from the courtroom and that the witness Glass was present at the time.

The court then granted, over objection, the State's motion to recall the witness Glass, stating that "* * * in the interest of justice, I think the jury ought to have all the information and for that reason I will permit the State to recall its witness." The jury was then brought in and Glass made an in-court identification of appellant as the man he had seen outside the bank with Lucas immediately prior to the robbery and repeated the substance of his testimony, including the threatening phone call in reference to his daughter. On cross-examination he admitted to a fraud conviction and having been dismissed from the Baltimore City Police force.

The State then called Charles Cofield, who testified that on April 22, 1968, he, appellant Gardner, Thomas Lucas and others "cased" the Union Trust Company's branch bank on North Avenue. They decided to rob the bank on

April 26, 1968, but he was arrested in the intervening period and was in jail on May 10, 1968 when the robbery took place at the Union Trust Company's branch bank. He stated that on April 22 he observed a sawed-off shotgun in the trunk of appellant's car. On May 25, 1968 he saw the appellant with the same shotgun, but a wooden piece was missing from the stock. A piece of wood found in the bank after the robbery was identified by Cofield as the piece missing from appellant's gun. On cross-examination, he testified that he faced indictments with a possible total sentence of 100 years and had previously been an inmate of the Patuxent Institution for three years. He also stated that he and his family were under the protective custody of the State. A defense motion to strike Cofield's testimony was denied.

I

Appellant's first contention is that the court erred in permitting the recall of Jerome Glass. With this contention, we cannot agree. The overall conduct of the trial must be left to the sound discretion of the trial judge and this Court will not interfere with that discretion unless there is an abuse thereof which results in prejudice to the accused. *Turner v. State*, 7 Md. App. 74, 253 A. 2d 777. In *Turner* we stated that a judge's action in permitting the recall of a witness was proper when trial counsel was afforded a full opportunity to cross-examine him as to what had taken place in the intervening period of time. In the instant case appellant's trial counsel was afforded a full opportunity to inquire into Glass' actions after the adjournment on the first day of trial, which he did at some length. The jury was allowed to consider any discrepancies in Glass' testimony. Under these circumstances, we cannot find that the action of the trial judge in allowing the recall and the subsequent in-court identification were clearly erroneous.

II

Appellant's second contention is that the in-court identification of appellant by Jerome Glass was tainted and

should not have been permitted to be considered by the jury. The thrust of appellant's argument is that Glass made his identification of Gardner because he saw Gardner handcuffed and led away after the first day of trial. In addition, appellant alleges that the State threatened Glass with a perjury prosecution and this factor enforced Glass' determination to identify Gardner. Appellant's contention is directly in contrast to Glass' statement on cross-examination that in fact his identification of appellant was based on his prior acquaintance with appellant through his friend Lucas. The court considered the testimony of Glass and found him to be credible.

There was evidence from which the court could find that Glass was able to identify appellant as the man outside the bank with Lucas based upon his prior recollection and not upon what had transpired on the first day of the trial, and that such identification had an independent source. *United States v. Wade,* 388 U. S. 218; *Smith and Samuels v. State,* 6 Md. App. 59, 250 A. 2d 285. Moreover, the trial court found no conduct on the part of the assistant State's attorney that improperly influenced Glass in his identification of the appellant, and we cannot say that the court was clearly wrong in its judgment.

### III

The test to be applied in judging the sufficiency of the evidence in a jury trial is that the admissible evidence adduced must show directly or support a rational inference of the facts to be proved, from which the jury could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. *Williams v. State,* 5 Md. App. 450, 247 A. 2d 731. Appellant correctly characterizes his case as one of identification. Appellant does not challenge the existence of the *corpus delicti* and therefore the question is whether the evidence was sufficient to establish the criminal agency of the appellant. The testimony of Jerome Glass as to appellant's presence with Lucas outside and entering the bank when coupled with Charles Cofield's testimony as to the prior "casing"

of the bank and appellant's possession of the shotgun, a piece of which was found in the bank, was enough to support a rational inference of the criminal agency of the appellant. Appellant contends, however, that both Glass and Cofield were so incredible as witnesses as to not support such a rational inference. Appellant's reliance upon *Kucharczyk v. State*, 235 Md. 334, 201 A. 2d 683, to challenge Glass' testimony is not well founded. In *Kucharczyk* the Court of Appeals reversed the appellant's conviction, finding that the lower court was clearly erroneous in finding the evidence sufficient to convict. The problem in *Kucharczyk* was proof of the *corpus delicti*. The only testimony thereto came from a retarded 16 year old boy. The boy's testimony on at least two occasions was contradictory to his own prior testimony, so that if the subsequent statements were believed no action had been taken by appellant which constituted the offense charged. The only actual discrepancy in the instant case related to whether or not Jerome Glass had seen appellant in handcuffs the previous day. It is clear that the jury found Glass to be a credible witness despite this minor discrepancy in his testimony. It is settled that the credibility of witnesses is a matter for the trier of fact. *Lindsay v. State,* 8 Md. App. 100, 258 A. 2d 760. The jury here heard vigorous cross-examination of both Glass and Cofield and was allowed to consider any discrepancies in their testimony. We cannot say from the record before us that the jury could not reach a rational conclusion that the appellant was guilty of the crime charged.

## IV

Appellant's contention that he was denied a fair trial is based exclusively on the State's use of Glass and Cofield as witnesses. As we have previously discussed the testimony of these two witnesses and stated that the trial court allowed the defense to fully attempt to impeach their testimony, we cannot say that appellant was denied a fair trial.

*Judgment affirmed.*