**UNITED STATES of America**
v.
**Lucille S. MILLER.**
**Crim. No. 6040.**

United States District Court
D. Vermont.
April 18, 1955.

Forces of the United States—in violation of Section 462(a), Title 50 of the United States Code, and in violation of Section 1617.1 of Title 32, Code of Federal Regulations. This indictment is still pending.

The warrant for the defendant's arrest was issued on January 24, 1955. The defendant, a married woman, appeared before this Court on February 23, 1955, for the purpose of entering a plea. She pleaded not guilty. Bail was fixed in the amount of $1,000. When the defendant was arraigned, she was alone, and the Court asked her if she did not desire to secure counsel. She informed the Court that she did not want counsel and would refuse to accept counsel.

At this hearing, the United States Attorney, pursuant to Section 4244 of Title 18 of the United States Code, presented his petition to this Court praying that the defendant be examined by at least one qualified psychiatrist, as provided in that section. The Court ordered the defendant committed to the Brattleboro Retreat for examination by two qualified psychiatrists at that institution. The defendant was committed to the Brattleboro Retreat for this examination on February 24, 1955. On March 10, 1955, by letter dated March 9, 1955, this Court was notified by Dr. John Butler Tompkins, Superintendent of the Brattleboro Retreat, that the observation of the defendant, Mrs. Lucille S. Miller, had been completed.

Louis G. Whitcomb, U. S. Atty. for Dist. of Vermont, Springfield, Vt., for the United States.

No appearance for defendant.

Statement of the Case

GIBSON, District Judge.

An indictment was returned on December 15, 1954. The indictment consisted of eighteen counts and charged the defendant with counseling certain persons to refuse to comply with the requirements of the Selective Service System and to refuse to serve in the Armed

On March 15, 1955, this Court issued a notice to the defendant and to her husband, Mr. Manuel Miller, that a hearing on the mental condition of the defendant would be held at the Federal Courtroom in the Post Office Building at Burlington on March 21, 1955, at 1:30 P. M. On March 18, 1955, cash bail in the amount of $1,000 was provided by Mr. Manuel Miller of Bethel, Vermont, husband of the defendant. Accordingly, the Superintendent of the Brattleboro Retreat having informed this Court that in his opinion while Mrs. Miller was insane she was not dangerous either to the

public at large or to herself, the Court ordered her released on bail, and she was released from the Brattleboro Retreat and taken by her husband, Manuel Miller, to their home in Bethel. On March 21, 1955, a hearing was held to determine whether the defendant had the mental capacity to understand and did understand the nature of the charges against her, and also to determine whether she had the mental capacity to assist in her own defense.

At the hearing on March 21, 1955, the defendant was accompanied by her husband, but by no lawyer. This Court again asked Mrs. Miller if she did not want to secure counsel. She advised the Court that she did not want counsel. She further advised the Court that it was not because of lack of funds that she did not desire counsel; it was just that she did not desire to have counsel represent her.

At this hearing on March 21, 1955, the defendant's husband, Manuel Miller, sought to represent the defendant. This Court advised Manuel Miller that since he was not admitted to the practice of law he could not represent his wife in the hearing, but that she had every right to represent herself. At this hearing, she thereupon represented herself, although she was aided greatly by suggestions from her husband, Manuel Miller.

The United States Attorney first called Dr. John Butler Tompkins, Superintendent of the Brattleboro Retreat. Dr. Tompkins testified that he is a member of the American Psychiatric Association; he is also a fellow of the American Psychiatric Society; he received his medical degree in 1935 and has specialized in psychiatry since February 1, 1936; he has been Superintendent of the Brattleboro Retreat since September 1, 1949. This institution averages to handle seven hundred mentally ill patients per day.

The United States Attorney also called Dr. John L. Smalldon, who is Clinical Director of the Brattleboro Retreat. He testified that he has been practicing medicine since 1924; he has been engaged in the practice of psychiatry since 1930; he became a diplomate of the Board of Neurology and Psychiatry in 1941.

Both Dr. Tompkins and Dr. Smalldon testified that they had examined the defendant, Mrs. Miller, commencing on February 24, 1955, and had continued to examine her until March 18, 1955; that they had given her the regular mental examination and they attempted to give her a psychological examination, but in this she refused to cooperate. During this period of time she was interviewed daily and observed many times each day by the doctors.

Both doctors testified that at the present time Mrs. Miller is insane, suffering from a mental illness denoted as manic depressive reaction, manic type. They described manic depressive reaction as one in which there is a disturbance of the moods of the patient, and the manic type is the type of mood change in which the patient goes into a state of elation, exaltation; in which they are overactive; in which their judgment is disturbed; they are free, on the whole—rather free—with their mood. They feel somewhat better than usual, but at the same time are apt to be very irritable and easily angered—particularly if people don't agree with them and if they are not permitted to do things they want to do.

Both doctors testified that the mental disease known as manic depressive reaction is ordinarily curable; that the cure time ordinarily for one staying outside of an institution would be from six to nine months, but that would depend largely on the environment in which the patient was placed. The present over-stimulated home environment of Mrs. Miller would be apt to delay recovery. Both doctors also testified that one having this disease could be cured within six to nine weeks if one was placed in a qualified institution and was cooperative.

The defendant cross-examined the doctors in an effort to show that each of them was biased against her because of an episode that had taken place in Janu-

ary of 1955, whereat the defendant attempted to secure the release of some patient from the Brattleboro Retreat. She maintained that both doctors were biased against her.

Both doctors testified that in their opinion the defendant understood the nature of the charges contained in the indictment. They also testified that in their opinion she did not then have the mental capacity to be able to adequately assist in her own defense.

The defendant called four residents of her home town of Bethel to take the stand and testify:

Delbert M. Stearns, a plywood manufacturer under the name of Fyles & Rice of Bethel. Mr. Manuel Miller works for this firm as a machinist.

Douglas N. Rice, of the same firm.

Raymond E. Durfee, President of Bethel Mills, for whom Manuel Miller also does much work.

None of these three witnesses had ever visited the Millers in the Miller home. Their contact was practically completely with Manuel Miller and not with Lucille Miller. None of them had, in the last year, any conversation with Mrs. Miller other than occasionally to inquire where Mr. Miller was.

The other witness called by the defendant was Merl E. Gaskell, a Deputy Sheriff of Bethel, Vermont, who was a neighbor that lived across the road. Mr. Gaskell testified that as a neighbor he had many conversations with Mrs. Miller; that he did not consider her to be insane. He did, however, state that her attitude in refusing to have counsel, when faced with a serious charge she was now facing, was an abnormal attitude.

At this hearing, also, Mrs. Miller read a prepared statement, which reads as follows:

"On Feb. 23rd, 1955 I was brought before this Court on an 18 count indictment.

"At the arraignment I pleaded Not Guilty and demanded a speedy and public trial by jury, on the basis of the charges. The U. S. Dist. Attorney then made the motion, which was accepted by the Court, that my sanity should be tested before my constitutional right to a trial should be granted.

"Article VI of the Bill of Rights of the U. S. Constitution says 'In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *.' The second word in this paragraph is *all*. And the Constitution means *all*. There is no qualifying statement concerning the nature of the accused, so it clearly means that any and all accused persons shall enjoy this right, whether they are sane, virtuous, sound in wind and limb, *or none of these things.*

"The section of the U. S. Code invoked by the U. S. Dist. Atty. was obviously intended to afford persons of questionable sanity a protection against the rigors of standing trial if they ask for such protection. It certainly was never intended to deprive an accused person of his constitutional right to a trial, if he demands one. Any other interpretation would be completely alien to the spirit of the U. S. Constitution, which was so worded as to convey unmistakably its great blessings on all the people alike, without requiring any authoritarian seal of approval as to the fitness or worthiness of any citizens to receive these blessings.

"This hearing, today, has been called for the announced purpose of determining whether or not I am so mentally incompetent as to be unable to understand the proceedings against me or properly assist in my own defense. As I have pointed out, the results of this hearing can in no way deprive me of my Constitutional right to a public trial on the basis of the charges on the indictment.

"I therefore move that you declare the questions now under con-

sideration to be immaterial and of no significance, that you dismis this hearing and that you take immediate steps to draw a jury and bring to trial the case of United States of America vs. Lucille S. Miller."

In view of the defendant's claim of bias on the part of Doctors Tompkins and Smalldon, this Court, in the presence of the defendant's husband, advised the defendant that she might have two weeks from that time in which to secure psychiatrists of her own choice, and that if such psychiatrists desired additional time for their study of her mental condition, such additional time would be granted. The defendant has, however, failed to furnish the Court any added psychiatric evidence.

### Findings of Fact

This Court finds that Doctors Tompkins and Smalldon are qualified psychiatrists; that the defendant is at present suffering from a mental disease known as manic depressive reaction, manic type; that this disease is of a temporary nature, and can be cured; that although she does understand the nature of the charges contained in the indictment, she is unable to properly assist in or conduct her own defense; that her cure from her present mental illness will be more assured and more rapid if she is placed in a mental institution under proper care and in a quiet environment.

### Conclusions of Law and Judgment Order

██ The only serious legal contention which the defendant has raised is that Sections 4244 and 4246, Title 18 of the United States Code are unconstitutional. She raises this question through a prepared statement which she read to the Court at the time of the hearing on March 21, 1955. Since she refused to employ counsel, and since she was determined to represent herself, this Court will treat her statement as a motion to dismiss her sanity hearing on the grounds that Sections 4244 and 4246 of the United States Code are unconstitutional. She claims that "the section of the U. S. Code invoked by the U. S. Dist. Atty. was obviously intended to afford persons of questionable sanity a protection against the rigors of standing trial if they ask for such protection. It certainly was never intended to deprive an accused person of his constitutional right to a trial, if he demands one."

Sections 4244 and 4246 of the United States Code read as follows:

"§ 4244. Mental incompetency after arrest and before trial

"Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a

finding with respect thereto. No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding. A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury."

"§ 4246. Procedure upon finding of mental incompetency

"Whenever the trial court shall determine in accordance with sections 4244 and 4245 of this title that an accused is or was mentally incompetent, the court may commit the accused to the custody of the Attorney General or his authorized representative, until the accused shall be mentally competent to stand trial or until the pending charges against him are disposed of according to law. And if the court after hearing as provided in the preceding sections 4244 and 4245 shall determine that the conditions specified in the following section 4247 exist, the commitment shall be governed by section 4248 as herein provided."

■ The first contention of the defendant—that these sections were not intended to apply unless the accused asked for their protection—is obviously without merit. The statute clearly and specifically gives the right to ask for such examination not only to the defendant, not only to the United States District Attorney, but even to the Court itself. Later in the statute, the following language is found: "* * * whether the examination shall be with or without the consent of the accused

* * *." To hold that the statute means as the defendant claims would be to disregard the clear and express words of the Congress of the United States.

■ The only other contention of the defendant is that the sections in question are unconstitutional. Several cases have upheld the constitutionality of Sections 4244 and 4246 of the United States Code. The Circuit Court for the Tenth Circuit denied a petition for habeas corpus and held that these sections were constitutional. In Wells, by Gillig v. Attorney General of the United States, 10 Cir., 201 F.2d 556, 559, the court held:

"While the care of insane persons is essentially the function of the states in their sovereign capacity as parens patriae, and while the federal government has neither constitutional nor inherent power to enter the general field of lunacy, Congress has the power to make provision for the proper care and treatment of persons who become temporarily insane while in custody of the United States awaiting trial upon criminal charges, and to make provision for the care and treatment of federal prisoners who become mentally incompetent during their incarceration after conviction."

Although strict reading of this part of the opinion would seem to indicate that Sections 4244 and 4246 of the United States Code are constitutional only when applied to persons "who become temporarily insane while in custody of the United States awaiting trial", the court indicated that it was not its intention to so narrowly construe the statute. The court said:

"* * * it is fairly clear that in the enactment of the statute the intent and purpose of Congress was to go no further than to make humane provision for the care and treatment of persons who were temporarily incompetent *at the time of their arrest* or who become so before trial on criminal charges and

whose restoration to competency may be reasonably expected at some time in the future and therefore whose trial on the criminal charges at some time in the future may reasonably be expected." (Emphasis added.) Wells, by Gillig v. Attorney General of the United States, 10 Cir., 201 F.2d 556, 560.

In the case of Higgins v. McGrath, D.C., 98 F.Supp. 670, the court held that Sections 4244 and 4246 of the United States Code were constitutional. This case involved a habeas corpus proceeding against the Attorney General to secure the release of the petitioner from the medical center to which he had been committed as insane and unable to make a defense to the indictment filed against him. The court held that the sovereign has the right to confine a person after his arrest until his sanity is restored.

As the United States District Court for the Western District of Missouri held that only the court which initially committed the accused could re-examine him in order to determine whether or not his mental condition had changed, defendant Higgins was returned to the Southern California District Court which had committed him. This court held a new hearing in order to determine whether or not the defendant was mentally fit for trial. After the second hearing, the court determined that the defendant was " 'unable to make a defense to the charges contained in the indictment herein.' " "Commitment was then made to the Attorney General 'for the purpose of observation and treatment until such time as said defendant shall become mentally competent or until the further order of the court.' "[1] On appeal from this determination, the defendant contended that Sections 4244 and 4246 of the United States Code were unconstitutional. The court, following the Tenth Circuit, held that these sections were constitutional. In Higgins v. United States, 9 Cir., 205 F.2d 650, 652, 653, the court stated:

"But there can be no doubt that the federal Congress has the power to prescribe reasonable rules for the care of persons who are charged with federal crime and awaiting trial. Indeed, we think the trial court has inherent power in the matter without the aid of the statute. We approve the expressions made in the case of Wells v. Attorney General, 10 Cir., 1953, 201 F.2d 556".[2]

The only case which raises doubts as to the constitutionality of these sections is Dixon v. Steele, D.C., 104 F. Supp. 904. In that case, however, it affirmatively appeared that the petitioner was permanently insane. That court held that since he was permanently insane, Section 4246 violated his constitutional rights. Such is not the case here.

 It was obviously the intent of the United States Congress in enacting Sections 4244 and 4246 of the United States Code, to protect accused persons who temporarily are mentally incompetent and are for this reason, either unable to comprehend the nature of the charges against them or unable to properly assist in their own defense. Certain, too, it is, that if one is not able—for mental reasons—to properly assist in one's own defense, one—for mental reasons—cannot properly conduct one's own defense. This protection was not intended to be limited and should not be limited only to those persons who have the mental capacity to assert it. If one does not have the mental capacity to properly assist in one's own defense, the court should not allow a trial to proceed merely because that same person, with the same mental capacity, claims that she does not desire to take advantage of the sections. The court cannot thus lift itself by its own bootstraps. The sound basic policy of Sec-

---

1. Higgins v. United States, 9 Cir., 205 F. 2d 650, 652.

2. See also: Kitchens v. Steele, D.C., 112 F.Supp. 383.

tions 4244 and 4246 of the United States Code is to protect people from facing charges against them when they are not mentally present. Certainly this requirement of mental presence at the trial is as important as physical presence.

Here the evidence indicates that defendant Miller is temporarily insane and unable to properly assist in her own defense. Both psychiatrists testified that in their judgment she could be cured within from six weeks to nine months.

Therefore, it is hereby ordered that, as the defendant is so mentally incompetent as to be unable properly to assist in her own defense and thus unable properly to conduct her own defense, she be committed to the custody of the Attorney General or his authorized representative until she is mentally competent to stand trial or until the pending charges against her are disposed of according to law.