# JOHN ALAN LANGWORTHY v. STATE OF MARYLAND

[No. 848, September Term, 1977.]

*Decided July 9, 1980.*

The cause was argued before MOYLAN, MELVIN AND COUCH, JJ.

*Thomas J. Saunders, Assistant Public Defender,* with whom was *Michael S. Elder, Assigned Public Defender,* on the brief, for appellant.

*Stephen B. Caplis, Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Richard Arnold, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

Virtually every judge in southern Maryland has, upon some hearing, trial or motion, lavished attention upon John Alan Langworthy. The Department of Health and Mental Hygiene and the Office of the Public Defender have both lavished untold resources upon John Alan Langworthy. Nothing has remotely satisfied John Alan Langworthy.

The appellant, John Alan Langworthy, was indicted by the Grand Jury for Prince George's County on October 30, 1974, for rape, assault with intent to rape and assault and battery. Upon his ultimate trial before Judge William H. McCullough, sitting without a jury, on July 28, 1977, the appellant was found not guilty by reason of insanity and committed to the Department of Health and Mental Hygiene. In his initial appeal to this Court, the appellant contended:

1) That he had been denied his constitutional right to a speedy trial;

2) That he was erroneously found competent to stand trial; and

3) That for a wide variety of *pro se* contentions, he had been denied appropriate relief.

In *Langworthy v. State,* 39 Md. App. 559, 387 A.2d 634, this Court held that the appellant had no right to appeal from an acquittal and that the verdict of not guilty by reason of insanity was an acquittal. In *Langworthy v. State,* 284 Md. 588, 399 A.2d 578, the Court of Appeals reversed that holding by this Court and determined that, under the circumstances here prevailing, the appellant was entitled to an appeal. Judge Orth there reasoned that the determination that the appellant was literally guilty of having committed the offense in question but was excused

from the penal sanction by reason of his lack of criminal responsibility did subject him nonetheless to detention with the Department of Health and Mental Hygiene for purposes of examination, evaluation and possible confinement. If error inhered somehow in the trial process, Judge Orth reasoned, the appellant might upon appropriate appellate review be entitled to total exculpation and freedom and he should, therefore, be permitted to seek review toward that end. Accordingly, the case was remanded to this Court for consideration of the appellant's original contentions.

Only one of them — the speedy trial issue — concerns us. The appellant has expressly abandoned his second contention dealing with Judge McCullough's finding of April 22, 1977, to the effect that he was then competent to stand trial. The third contention, actually a set of contentions, was simply a broad fusillade of bald assertions not supported by factual predicate or legal argument and transparently empty of merit. Under Md. Rule 1031 c 4 and 5, we give no further consideration to this "grab bag" of unharnessed accusations.

Even with respect to the speedy trial issue, our focus is thankfully narrowed. The appellant was arrested on October 20, 1974; he was tried on July 29, 1977, 33 months later. Self-evidently, this is enough to trigger a speedy-trial analysis under the four factors set out in *Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). When we undertake that four-factored analysis, the length of delay of 33 months is very significant. With respect to "demand-waiver," the appellant made numerous motions to dismiss the indictment against him on the grounds that he had been denied his right to a speedy trial. His actions were frequently inconsistent with his pleadings in this regard, as will be more fully discussed hereinafter, but his motions were more than sufficient to alert everybody to the fact that "speedy trial" was unmistakably an issue in this case. With respect to prejudice, the appellant did not affirmatively establish nor did the State affirmatively negate any actual prejudice, but the presumptive prejudice arising from a

delay of 33 months is substantial in and of itself.[1] This entire case rises or falls upon our consideration of the single factor of reason for the delay or fault.

Our holding, without a minute parsing day-by-day of this thousand-day triennium, is that virtually the entire period of delay is attributable to the appellant. This attribution to him breaks down into two parts, which will be considered separately. A large part of the delay was caused affirmatively by him. Another significant period of delay — that involved first in the evaluation of his competency and then the deferral of the trial during his period of incompetency — was exclusively for his benefit.

With respect to the first basic source of delay, we observe that this record is choked with scores of variegated pleadings, hundreds upon hundreds of tightly-scripted pages of *pro se* letters, and a number of agonizing suspensions of this litigation while the defendant called "time out" to pursue interlocutory appeals to this Court or to seek redress in the federal courts. It would be an exercise in futility to inventory them all. In essence, the appellant was a loose cannon upon the trial deck, and his chaotic lurchings made the orderly passage of his case impossible. Every constituent element of the criminal justice system extended itself commendably to move this case forward but was continuously frustrated by the appellant's strewing of procedural obstacles in the path, compounded by his obstreperous and truculent disruptiveness at every turn.

The crime in this case occurred on October 19, 1974. The appellant was arrested on October 20. He was indicted on October 30. He was arraigned on November 7. The Office of the Public Defender entered an appearance on his behalf on

---

1. We do note, however, that a plea of not guilty by reason of insanity was not filed on the appellant's behalf until January 12, 1976, almost 15 months into the period of delay. It was then done over the appellant's objection and by the second generation of defense counsel. In view of the subsequent verdict of guilty upon the merits but not guilty by reason of insanity, it appears, ironically, that the appellant, rather than being prejudiced, benefited immensely from this delay. In view of our disposition of the case upon our consideration of the "reason for delay or fault" factor, however, it is unnecessary to explore further this interesting but immaterial phenomenon.

November 13. On November 21, a trial date was set for a jury trial on January 21, 1975. Meanwhile, on December 2, 1974 the appellant posted bond and was released. When the case came on for trial on January 21, 1975 the appellant failed to appear. The bond was forfeited, and a bench warrant was issued for his arrest. On February 13, the case was stetted, but the bench warrant remained in effect. On April 1, the appellant was turned in by his bail bondsman, and on April 3, the case was taken from the stet docket and reopened. On April 10, defense counsel refiled his appearance. During all of this period of time, no fault of any sort lies remotely at the doorstep of the State. Any delay was directly attributable to the appellant's absconding.

On April 30, 1975, a notice was sent to counsel setting a new trial date of July 22. In the meantime, the appellant had on April 22 filed a motion to dismiss the indictment for lack of a speedy trial and filed an additional motion to have his bail bond, which had been forfeited, reinstated. A hearing was held on this latter motion on May 8, and the motion was denied. On that same occasion, however, the defense filed a motion to require the rape victim to undergo a psychiatric examination. On that same day, the appellant's counsel filed a motion to strike his appearance, averring that the "defendant has lost confidence in petitioner's representation of him; that petitioner does not feel that he can represent defendant in the manner defendant wishes." In the course of the proceedings that day, the court came to the conclusion that the appellant might not be competent to stand trial. Out of the appellant's presence, a discussion took place between the judge and counsel concerning the advisability of a competency examination. When the appellant learned of this, he filed a motion on May 14 in opposition to such examination on the grounds that he had not had the opportunity to be heard on this question and that there was no evidence to suggest that he was incompetent.

On May 15, the appellant filed a motion alleging that his counsel was incompetent. On May 20, the judge refused to permit defense counsel to withdraw from the case, and he set

a hearing date of May 26 for all pending motions. All motions were denied on that date.

On June 3, 1975, the appellant filed, *pro se,* an appeal to this Court from these various denials. On July 3, he filed with the Court a letter excoriating the Office of the Public Defender for its "totally absurd, misrepresentative and inaccurate letter" indicating that the appeal was premature. By way of vindicating that judgment, however, this Court dismissed the appeal as premature by its order of July 11, 1975. In the meantime, the entire record in the case had been transmitted to this Court on July 10.

On June 20, the appellant moved to dismiss the indictment for lack of a speedy trial. On that same day, he moved to have the case transferred to federal court. He had earlier, on June 4, petitioned for a writ of habeas corpus. On that same June 4, he had written the Public Defender accusing him of "an appalling, scandalous sham and mockery of justice" and threatened "to expose the corruption of your office in open court." On June 24, he also petitioned, *pro se,* to have his case removed from Prince George's County to Anne Arundel County. On that same June 24, he asked for a continuance with respect to the July 22 trial date. On June 25, he petitioned for the right to represent himself.

After this Court dismissed the appeal as premature on July 11, the appellant's original counsel was permitted to withdraw his appearance on July 14, and substitute counsel from the Public Defender's Office was assigned to represent him. As the trial date of July 22 approached, the appellant filed additional motions to suppress evidence and to have a Psychological Stress Evaluation Test performed upon him. Raising various and sundry other points, he had filed with the trial court a lengthy letter on July 4, a second lengthy letter on July 5, and two additional letters on July 9. Three more letters were filed on July 17. Although numerous other communications clogged the process, these were the more prominent occurrences as Judge McCullough approached the trial date of July 22, 1975. In court on that day, a hearing was held on all pending motions and those motions were

denied. To that point, we have no difficulty in concluding that whatever delay there had been (and it was not yet inordinate) was attributable to the battles between the appellant and his own counsel; to the ill-advised, *pro se* filing of a premature appeal; to the unauthorized disappearance of the appellant for 10 weeks with its attendant "ripple effect" upon the rescheduling process; and to the absolute inundating of the trial court with every conceivable variety of motion known to the "jailhouse bar."

At the July 22 hearing, the second basic source of delay in this case first appeared. The appellant appeared wearing a blindfold at his own insistence and informed the court that he was going to represent himself. Following a harangue about the conspiracy afoot among various judges and other public officials to deny him his rights, the court expressed its *sua sponte* concern about his competency to stand trial and ordered him referred to the Clifton T. Perkins State Hospital for an evaluation in that regard. The referral order also mentioned the fact that the appellant had in 1973 been committed to a mental hospital in Massachusetts following a judicial determination that he had been mentally ill at the time of a previous rape allegedly committed by him. The appellant strongly opposed the competency evaluation on the grounds that it would violate his religious beliefs and that "it is obvious that I am competent to stand trial."

On October 5, Perkins notified the court that, in the opinion of the Perkins staff, the appellant was competent to stand trial. The appellant takes umbrage at the last 45 days of this 75-day period, charging that it was in excess of the 30 days permitted Perkins to report back to the court.[2] The appellant certainly did not help to expedite his diagnosis in view of his July 22 letter to Judge McCullough indicating that he would "very politely refuse to cooperate with an involuntary mental competency exam." At the more fundamental level, we are guided by the reasoning of Judge Lowe in *Wilson v. State,* 44 Md. App. 1, 11, 408 A.2d 102:

---

2. We will not quibble with the appellant over the fact that the July 22 order did not direct that the appellant be delivered to Perkins until July 28. Six days more or less are not critical.

"This delay — almost 3 months — resulted from appellant's entry of pleas of not guilty by reason of insanity in both cases. The insanity defense necessitated a psychiatric evaluation which took 2 months to complete. This is not part of an ordinary trial and was initiated for appellant's benefit. It can hardly be weighed against the State. Appellant's reliance on *State v.Hiken,* 43 Md. App. 259 (1979), is misplaced. Although this Court held that appellants should not be penalized for delays caused by technical defenses, we did not hold that the State should bear the brunt. The month delay between filing of the report and the scheduling of a trial date is also reasonable. The system is not expected to respond to such defense oriented deferrals with immediacy, rather only expeditiously."

We also find persuasive in this regard the concurring opinion of Judge O'Donnell in *Smith v. State,* 276 Md. 521, 537-539, 350 A.2d 628. See also *Baldwin v. Warden,* 243 Md. 326, 328-329, 221 A.2d 73; *Ricon v. Garrison,* 517 F.2d 628 (4th Cir. 1975).[3]

Even from the confines of Clifton T. Perkins, the paper barrage continued unabated. On August 14, the appellant notified the court of his motion to remove his case to the United States District Court. On August 19, he requested a postponement of his trial that had tentatively been set for September 18, thereby belying his current contention that the extra days at Perkins denied him a speedy trial. Indeed, in the course of this letter, he affirmatively requested that he "should remain at Clifton T. Perkins Medical Center" rather than be returned "to the unconstitutional hell-hole" of the Prince George's County Detention Center.

Following the receipt of the report on competency, a trial date was set for November 19. On November 18, a pretrial hearing was held at which six of the appellant's motions were denied, including his motion to dismiss his second

---

3. In any event, the excess 45 days or 39 days (as the case may be) is inconsequential in looking at the total picture.

assigned counsel. Rulings on three other motions were deferred until the time of trial. One motion, not here pertinent, was granted. More significantly, a joint motion by both the appellant and the State to postpone the trial scheduled for November 19 was granted. A new trial date was set for January 12, 1976. To this point, virtually every day of delay has been at the request of the appellant, caused by the appellant, or for the benefit of the appellant, notwithstanding his repeated claims that he had been denied a speedy trial.

The delay entered an entirely new phase on January 12. On that day, over the appellant's objections, defense counsel wisely entered the ultimately prevailing plea of not guilty by reason of insanity. Defense counsel also alleged, over appellant's objection, that the appellant was not competent to assist in his own defense. Judge McCullough referred the appellant to Perkins for evaluations on both issues. Within the required 60 days on this occasion pertinent, Perkins reported that the appellant was both insane at the time of the offense and incompetent to stand trial. The Perkins examination revealed a four-year history of psychotic disorganization; "persecutory, paranoid and grandiose delusions"; the belief by the appellant that he was the victim of a plot to murder him and a further belief that he had "a divine mission to accomplish." He was further diagnosed as dangerous. By court order of April 1, he was committed to the Department of Health and Mental Hygiene until such time as it determined him to be competent to stand trial. In the meantime, the appellant had filed another *pro se* motion to continue the January 12 trial date and to dismiss his counsel.

As to the propriety of defense counsel's urging of incompetency over the appellant's express and vigorous objections, we are guided both by inherent logic and the reasoning of Judge Scanlan for this Court in *White v. State,* 17 Md. App. 58, 63, 299 A.2d 873:

> "Instances will arise where an obviously incompetent defendant attempts to withdraw an insanity plea which his counsel previously had

entered in his behalf. . . . In such a case, it would be the duty of trial counsel and the responsibility of the court to prevent the improvident withdrawal of the insanity plea. The basic question is one of fundamental fairness, *i.e.,* of insuring that a mentally incompetent defendant is not convicted for a crime he committed at a time when he lacked the requisite mental competency."

Judge Melvin spoke to a similar effect in *Riggleman v. State,* 33 Md. App. 344, 350-351, 364 A.2d 1159:

"[O]nce an insanity plea is filed, both trial counsel and the court have a responsibility to see that it is not improvidently withdrawn, even at the request of an accused."

It was 14 months after the January 12, 1976 referral — on March 11, 1977 — that Perkins deemed the appellant again competent to stand trial, albeit not without reservation. As is required by Art. 59, § 23, Judge McCullough scheduled a competency hearing for April 22. At that hearing, the judge ruled that the appellant was competent beyond a reasonable doubt.

It is the appellant's spurious but clever argument with respect to this 15-month period between the January 12, 1976 referral to Perkins and the April 22, 1977, finding of competency that calls for some analysis of first impression. Before turning to it, however, we will chronicle the waning phases of this 33-month epoch. On April 22, 1977, Judge McCullough could not move forward with an immediate trial on the merits but stayed the proceedings pending the final determination as to the appellant's request for removal to the United States District Court. After the federal court declined to assume jurisdiction over the case, Judge McCullough ordered on May 18 that the trial be set for July 12. Following the appellant's unsuccessful efforts on July 12 to dismiss his lawyer and then to have himself appointed as co-counsel, the trial was continued until July 28 because of the unavailability of a sufficient number of jurors. This final 16-day delay was by no means the fault of the appellant. The

verdicts on the merits were rendered by Judge McCullough on July 29.

It is the appellant's prime contention, on the speedy trial issue, that the 15-month period spent at Perkins 1) while his competency was being evaluated and 2) while he was deemed incompetent should be charged against the State. He reasons that his confinement was illegal and denied him due process of law. Part of his argument in this regard is that the determination of incompetency was made over his objection. As a simple exercise in logic, this contention falls of its own weight. One found to be incompetent is, *ipso facto,* incompetent to object to that finding of incompetency. The Supreme Court so observed in *Pate v. Robinson,* 383 U.S. 375, 384, 86 S. Ct. 836, 15 L. Ed. 2d 815, 821 (1966), "[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." The law is clear, moreover, that the issue of incompetency may be raised by defense counsel even over the objection of the defendant (as it was in this case), by the prosecutor or by the court *sua sponte.* Art. 59, § 23; *White v. State, supra; Riggleman v. State, supra.* The very same body of case law makes the cognate point that any delay occasioned by either the evaluation of incompetency or confinement of an incompetent pending his return to competency is not chargeable against the State for speedy trial purposes. The American Bar Association Project on Minimum Standards for Criminal Justice, *Standards Relating to Speedy Trial* (Approved Draft, 1968) recommends in § 2.3 (a), in pertinent part:

"2.3 Excluded periods.

The following periods should be excluded in computing the time for trial:
(a) The period of delay resulting from other proceedings concerning the defendant, including but not limited to an examination and hearing on competency and the period during which he is incompetent to stand trial . . . ."

Citing these ABA standards, *Hodges v. United States,* 408 F.2d 543 (8th Cir. 1969), per Judge Blackmun (now Justice Blackmun of the Supreme Court), pointed out that, "With Hodges' competency appropriately in question, any deferment of the trial for the 88-day Springfield period is no part of an unreasonable delay." 408 F.2d at 548. In *United States v. Pate,* 351 F.2d 910 (7th Cir. 1965), the court dealt with a defendant's contention that a five-year detention in a mental hospital had deprived him of his right to a speedy trial. The court held otherwise, at 351 F.2d 912:

> "The petitioner had been adjudicated insane. Delay in trial until he was adjudicated sane was not unreasonable delay. There was no violation of his Constitutional right to a speedy trial."

*Cf. Germany v. Hudspeth,* 209 F.2d 15, 19 (10th Cir. 1954).

The Texas Court of Criminal Appeals held to a similar effect in *Grayless v. State,* 567 S.W.2d 216, 220 (1978):

> "Soon after his arrest appellant was transferred to Villa Rosa mental hospital, where he spent five months undergoing examination and treatment. Delays encountered in bringing a defendant to trial who claims to be incompetent or who is temporarily incompetent ordinarily do not infringe on the right to a speedy trial."

In *State v. Warren,* 224 Kan. 454, 580 P.2d 1336, 1338 (1978), the Supreme Court of Kansas made a similar finding and in the course thereof analogized the competency determination to the insanity determination:

> "[T]he time between the filing of a motion for a psychiatric examination and the date on which the psychiatrist's report is received are properly chargeable against the defendant. Although *Powell* [*State v. Powell,* 215 Kan. 624, 527 P.2d 1063 (1974)] involved a psychiatric examination in connection with a proposed insanity defense and not an examination to determine competency, the principle is the same."

See also *In re Severns,* 330 P.2d 752 (Okla. Crim. App. 1958).

The cases are legion in holding that once an accused has been determined to be incompetent, the deferral of his trial pending a return to competency does not offend any right to a speedy trial under the Sixth Amendment. *Howard v. United States,* 261 F.2d 729 (5th Cir. 1958); *Commonwealth v. Bruno,* 435 Pa. 200, 255 A.2d 519, 522 (1969) ("Appellant also submits that his commitment to Farview State Hospital for an indefinite period violates his constitutional right to a 'speedy trial.' All the authorities our research has uncovered indicate that the federal constitutional guarantee of a speedy criminal trial does not require that an incompetent accused be tried."); *People v. Cole,* 66 Ill. App. 3d 210, 383 N.E.2d 613, 614 (1978) ("[T]he time period during which an accused must be tried tolls during the period when he is unfit to stand trial."); *State v. Violett,* 111 N.W.2d 598, 603 (S.D. 1961) ("Unless there was more delay than was reasonably attributable to mental incompetency to stand trial, the delay was consistent with the ordinary processes of justice and would not entitle accused to discharge.").

The appellant, however, adds a wrinkle not present in these other determinations. He claims that the special reason why his particular confinement during the period of his alleged incompetency must be held against the State for speedy trial purposes is that the determination made by Judge McCullough in that regard on April 1, 1976 offended due process of law. He argues that a hearing was not conducted as is required by Art. 59, § 23, that he was not permitted to be present and to contest that finding, and that he was not proved to be incompetent beyond a reasonable doubt. What the appellant manages to do in this argument is to take all of the safeguards designed to protect an incompetent from standing trial and turn them upside down.

With respect to the necessity for a hearing, all competent and responsible parties were agreed that the appellant was incompetent and no such adversary hearing was required. It was defense counsel who raised the issue of the appellant's incompetency. The trial judge agreed that that was probably the case. The prosecutor was perfectly acquiescent in such a

determination. The report from Clifton T. Perkins was unequivocal that the appellant was incompetent. The only person who now claims that he should have been permitted to contest the finding of incompetency is the one person who, by virtue of that incompetency, was ineligible to participate in or contribute to an adjudication in any way.

We hold, moreover, that the hearing required by Art. 59, § 23, once competency is a genuine issue in the case, is a hearing at which the trial judge must be satisfied beyond a reasonable doubt that the defendant is competent before the defendant may be required to go forward and stand trial. *Colbert v. State,* 18 Md. App. 632, 308 A.2d 726; *Rozzell v. State,* 5 Md. App. 167, 245 A.2d 917; *Strawderman v. State,* 4 Md. App. 689, 244 A.2d 888. This is the thing that was done by Judge McCullough on April 22, 1977, when he found beyond a reasonable doubt that the appellant was competent and when he required the trial process to resume its movement. Such a requirement by no means suggests, by necessary implication, the converse requirement of such a hearing or such a burden of proof before trial is deferred on the grounds that a defendant is incompetent. Due process protects an incompetent defendant from being forced to the trial table, not from being withheld from the trial table. The Supreme Court pointed out in *Pate v. Robinson, supra,* at 383 U.S. 378, that, "The conviction of an accused person while he is legally incompetent violates due process." As Judge Horney pointed out for the Court of Appeals in *Hamilton v. State,* 225 Md. 302, 307, 170 A.2d 192, "The basic purpose of these code sections . . . is and has always been paternalistic in nature." The federal cases as well point out that such statutes are designed to protect defendants, where competency is in doubt, from having to stand trial, not vice versa. *United States v. Miller,* 131 F. Supp. 88 (D. Vt. 1955); *United States v. Muncaster,* 345 F. Supp. 970 (M.D. Ala. 1972).

The thrust of all of the case law is that the deferral of trial and even the hospitalization of the defendant until there has been an appropriate determination that such defendant is, indeed, competent is not punishment or penal sanction of

any sort but is solely for the benefit of the defendant. The requirement of a hearing meeting due process standards before there can be a finding of competency, the allocation of the burden of proof to the State to show competency and the quantifying of that burden at the "beyond the reasonable doubt" level all reveal the unmistakable tilt of the law toward a finding of incompetency rather than of competency, when in doubt. The State, as a self-evident truism, cannot be required to prove competency beyond a reasonable doubt before a trial may proceed and also to prove incompetency beyond a reasonable doubt before trial may be deferred.[4] Thus, the failure to persuade the hearing judge beyond a reasonable doubt that a defendant is competent, the legal failure of proof in that regard or the procedural failure to conduct a proper hearing in that regard all result in a continued state of presumptive incompetency. All doubts and ambiguities are, as a matter of law, resolved in favor of incompetency. If the hearing judge is simply not persuaded one way or the other by equivocal evidence, even if he is persuaded by a preponderance of evidence that a defendant is competent or, yet more, he is persuaded clearly and convincingly that a defendant is competent, he must still find the defendant incompetent absent persuasion beyond a reasonable doubt in the other direction. In summary, all of the safeguards shielding a possibly incompetent defendant from the trial process cannot be turned around the other way without, by that very process, destroying those interests which those safeguards were designed to protect.

Upon our assessment that even the lengthy delay in this case was in major measure either caused by the appellant himself or occasioned by provisions of our law intended to benefit the appellant, we find no denial of his Sixth Amendment right to a speedy trial.

*Judgment affirmed; costs to be paid by appellant.*

---

4. Before abandoning his second contention, the appellant attempted to make the State assume such a mission impossible. Even as he was maintaining on this contention that he should not have suffered a trial deferral because of the inadequate establishment of incompetency, he urged under his second contention that he was improperly forced to trial because of the inadequate establishment of competency.