IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,167

In the Matter of the Petition for a Writ of Habeas Corpus
by CLAY SNYDER.

SYLLABUS BY THE COURT

1.

The Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial.

2.

Delays attributable to a defendant's incompetency to stand trial do not infringe upon his or her Sixth Amendment speedy trial rights.

3.

On the facts of this case, the petitioner was not denied due process under *Jackson v. Indiana*, 406 U.S. 715, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972).

Original proceeding in habeas corpus. Opinion filed July 27, 2018. Writ denied.

*Mark J. Dinkel*, public defender, argued the cause, and *Ashley J. Long*, assistant public defender, was with him on the briefs for petitioner.

*Kristafer R. Ailslieger*, deputy solicitor general, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for respondent.

The opinion of the court was delivered by

STEGALL, J.: In May 2013, the Saline County District Court first found Clay Robert Snyder not competent to stand trial because of his intellectual disability. Since then, Snyder has cycled through competency detainment and involuntary commitment at least twice. Most recently in November 2016, the district court found Snyder was still not competent to stand trial and ordered the State to initiate civil commitment proceedings against him.

Shortly thereafter, Snyder petitioned for habeas relief, asking us to release him from confinement and dismiss his criminal charges with prejudice to remedy federal speedy trial, due process, and equal protection violations. We find no violations on the present showing and deny Snyder's petition for habeas relief.

FACTUAL AND PROCEDURAL BACKGROUND

On December 27, 2012, Snyder was charged with rape, aggravated criminal sodomy, and aggravated indecent liberties with a child in Saline County. A few days before the preliminary hearing was scheduled to occur, defense counsel filed a motion to determine Snyder's competency to stand trial. The district court granted the motion and ordered Snyder to undergo multiple competency evaluations.

Each evaluation yielded the same conclusion—that Snyder was incompetent to stand trial. The examining psychologists opined that Snyder suffers from a severe intellectual disability arising from microcephaly. They described Snyder as: "extremely impaired and in the lower end of the Mild Mental Retardation range"; "suffering from a Pervasive Developmental Disorder that is directly related to microcephaly"; and having

2

short-term memory that is "significantly below average." On May 23, 2013, the district court found Snyder not competent to stand trial and ordered him committed to Larned State Hospital (Larned) for evaluation and treatment for a period not to exceed 90 days.

Because it is relevant to this factual summary, we pause now to address Snyder's motion under K.S.A. 60-409 for judicial notice of the nature of microcephaly. Snyder has recited medical facts about microcephaly and its attending disabilities. The State does not oppose the motion and does not contest the common definition of microcephaly as a medical condition in which a baby's head is smaller than normal, often present at birth and accompanied by lifelong intellectual disability. Further, the evidence in the record is clear that Snyder suffers from the condition of microcephaly and his intellectual disabilities all stem from this condition. None of the parties contest this evidence. As such, sufficient facts are before us in the record as to render Snyder's motion moot, and it is denied for that reason.

In August 2013, a Larned psychologist reported to the district court that Snyder was competent to stand trial. The record is unclear about what transpired next, but it appears the proceedings were delayed for a few months to accommodate a competency evaluation by a different psychologist. This psychologist concluded Snyder was not competent to stand trial.

On November 13, 2013, the court held an evidentiary hearing where the parties presented the psychologists' testimony and other medical evidence. On December 3, 2013, the court found Snyder was not yet competent to stand trial and ordered him committed to Larned for competency restoration for a period not to exceed six months.

In March 2014, Larned again reported that Snyder was competent to stand trial. This report precipitated more competency evaluations, which culminated in another evidentiary hearing on April 18, 2014. At the hearing, Snyder presented two

psychologists who testified that he was not competent to stand trial and had a poor prognosis of becoming competent in the future. The State called no witnesses. A month later, the State conceded Snyder's incompetence and the district court found Snyder was not competent to stand trial.

At this point, the record becomes blurry. It appears the district court ordered the Kansas Department for Aging and Disability Services (KDADS) to commence involuntary commitment proceedings against Snyder in the fall of 2014, but the order is missing from the record. At oral argument, the parties clarified that sometime in 2014 Snyder was civilly committed under the Kansas Care and Treatment Act for Mentally Ill Persons, K.S.A. 2017 Supp. 59-2945 et seq., in Pawnee County. But the record does not reveal—and the parties could not recall at oral argument—the precise duration of this commitment.

As far as we can tell, Snyder remained confined at Larned, and the Saline County District Court held regular status hearings regarding his progress toward competency. During this time, a series of Larned reports indicated that Snyder's progress toward competency was minimal and slow. At the status hearings, Snyder consistently objected to continuances of the criminal case on the grounds that he suffered a speedy trial violation under *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), and a due process violation under *Jackson v. Indiana*, 406 U.S. 715, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972). The district court overruled each objection. In early June 2016, Snyder also moved to dismiss the charges with prejudice, again alleging constitutional violations under *Barker* and *Jackson*. The court subsequently denied the motion.

In late June 2016, Larned sent a report to the court stating Snyder was competent to stand trial. This triggered four more competency evaluations, which all concluded that Snyder was not competent to stand trial. One psychologist reported that Snyder's

4

"condition can't be effectively eliminated or remedied with any medical or other treatment procedure," and "the competency restoration process has been completely ineffective." Another stated,

> "Congenital microcephaly and resultant intellectual disability suggests that any further treatment, education or habilitation would be futile. Given his current incompetence to stand trial despite three years of treatment and the assumption that the competency treatment program the defendant undertook met a standard of care . . . the defendant lacks the capacity to become competent in the foreseeable future."

In the wake of these reports, the State again conceded that Snyder was not competent to stand trial. On November 23, 2016, the Saline County District Court found Snyder was not competent to stand trial with no substantial probability that he would attain competency in the foreseeable future. Consequently, as directed by Kansas statute, the court again ordered KDADS to commence involuntary commitment proceedings against Snyder. See K.S.A. 2017 Supp. 22-3303(1).

On February 2, 2017, Snyder filed the instant action directly with this court, seeking release from confinement and dismissal of the charges with prejudice based on federal due process, equal protection, and speedy trial violations. See K.S.A. 2017 Supp. 60-1501. Later that month, in tardy compliance with the Saline County District Court's November 23, 2016 order, KDADS filed a petition for determination of mental illness in Pawnee County, again alleging Snyder was a mentally ill person subject to involuntary commitment for care and treatment at Larned.

On March 21, 2017, the Pawnee County District Court held a bench trial, found Snyder was a mentally ill person subject to involuntary commitment for care and treatment, and ordered him to be civilly committed at Larned. Snyder's resulting civil commitment is the subject of a separate case, this day decided. See *In re Care & Treatment of Snyder*, ___ Kan. ___, ___ P.3d ___ (2018) (No. 117,512, this day decided).

Subsequently, this court entered an order staying Snyder's habeas case until Snyder was released from involuntary commitment and requiring the parties to submit periodic status updates.

On December 18, 2017, Snyder moved this court to lift the stay and schedule oral argument, claiming he was to be discharged from civil commitment at Larned. A few days later, we ordered the parties to show cause why the case should not be scheduled for oral argument. The parties indicated that Snyder remained in custody at Larned and a dispute had arisen in Pawnee County District Court about the status of Snyder's civil commitment. On January 2, 2018, the district court held a hearing to resolve the matter and took it under advisement.

On January 5, 2018, we entered an order lifting the stay and setting oral argument for January 26, 2018. After argument but while this case was pending, the Pawnee County District Court issued its ruling from the January 2, 2018, hearing. The court found that Snyder continues to qualify as a mentally ill person subject to involuntary commitment for care and treatment.

We exercise original jurisdiction in this action. Kan. Const. art. 3, § 3 ("The supreme court shall have original jurisdiction in proceedings in . . . habeas corpus.").

ANALYSIS

1. *Snyder was not denied a speedy trial.*

Snyder argues his lengthy detainment for competency restoration has violated his federal speedy trial rights under *Barker* and asks this court to dismiss his criminal charges with prejudice. In *Barker*, the Supreme Court set forth a four-factor balancing test to determine whether a defendant's Sixth Amendment right to a speedy trial has been

6

violated: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530. Assuming three factors—length of delay, assertion of the right, and prejudice to the defendant—weigh in Snyder's favor, his speedy trial claim is still foreclosed by the sole reason for the delay—his incompetency to stand trial.

On January 7, 2013, the Saline County District Court granted Snyder's motion to determine his competency to stand trial. At that time, Snyder's criminal case was suspended by statute. See K.S.A. 2017 Supp. 22-3302(1) ("If, upon the request of either party . . . the judge before whom the case is pending finds that there is reason to believe that the defendant is incompetent to stand trial the proceedings shall be suspended and a hearing conducted to determine the competency of the defendant."). It remains suspended to this day because no court has found Snyder competent to stand trial. See K.S.A. 2017 Supp. 22-3302(4) ("If the defendant is found to be competent, the proceedings which have been suspended shall be resumed.").

The mandatory suspension of criminal proceedings during a period of incompetency is "[c]onsistent with due process protections imposed by the United States Supreme Court." *State v. Ford*, 302 Kan. 455, 457, 353 P.3d 1143 (2015). Indeed, "[i]t is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v. California*, 505 U.S. 437, 439, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992). Though the Sixth Amendment guarantees an accused the right to a speedy a trial, the stubborn fact remains—Snyder cannot be constitutionally tried while incompetent.

Shortly after *Barker* was published, we held: "Where the state makes a proper record on delays occasioned by a determination of the accused's competency to stand trial, the state is not charged with such delay in determining whether the accused was afforded a speedy trial" under *Barker*. *State v. Fink*, 217 Kan. 671, 679, 538 P.2d 1390

(1975); see *State v. Smith*, 215 Kan. 34, 40, 523 P.2d 691 (1974) (finding no speedy trial violation under *Barker* where delay was "due in large part to appellant's own request to have his competency determined").

Likewise, other jurisdictions follow the same rule. See *United States v. Mills*, 434 F.2d 266, 271 (8th Cir. 1970) ("The courts . . . hold that delays encountered in bringing a defendant to trial who claims to be incompetent or who is temporarily incompetent ordinarily do not infringe upon his Sixth Amendment right to a speedy trial."); *Langworthy v. State*, 46 Md. App. 116, 128, 416 A.2d 1287 (1980) ("The cases are legion in holding that once an accused has been determined to be incompetent, the deferral of his trial pending a return to competency does not offend any right to a speedy trial under the Sixth Amendment."); *State v. Mendoza*, 108 N.M. 446, 449, 774 P.2d 440 (1989) ("The law is clear that conviction of a legally incompetent accused violates due process. . . . Regardless of who initiates the proceeding a competency examination is clearly on behalf of the accused and in no way infringes on that person's speedy trial rights."); *State v. Woodland*, 945 P.2d 665, 670 (Utah 1997) ("That delays caused by questions of competency do not impinge on an accused's right to a speedy trial is well established.").

The bottom line is, Snyder cannot be tried in a condition of incompetency without running afoul of due process. Snyder contested his competency a few weeks after arraignment. Since then, he has remained legally incompetent to stand trial. Under these circumstances, the long delay caused by Snyder's incompetency cannot be attributed to the State. Therefore, we hold Snyder's federal speedy trial rights have not been violated, and his criminal charges remain suspended.

## 2. *Snyder was not denied due process.*

Next, Snyder claims his lengthy detainment—from his first motion contesting competency until now—violates due process under *Jackson*. He argues the State has effectively subjected him to indefinite commitment "simply on account of his incompetency to stand trial on the charges filed against him," as *Jackson* forbids. 406 U.S. at 720. However, we find no *Jackson* violation in this case on the specific facts as presented to us.

In *Jackson*, the state of Indiana was indefinitely detaining a "mentally defective" defendant—whose chances of becoming competent were "minimal, if not nonexistent"— without convicting him of a crime or subjecting him to the civil commitment procedures applicable to other citizens. 406 U.S. at 717, 727. The Supreme Court determined that "Indiana's indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial" violated the Fourteenth Amendment's due process guarantee. 406 U.S. at 731. As the Court explained,

> "It is clear that Jackson's commitment rests on proceedings that did not purport to bring into play, indeed did not even consider relevant, *any* of the articulated bases for exercise of Indiana's power of indefinite commitment. . . . At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." 406 U.S. at 737-38.

Furthermore, the Court erected due process boundaries to prevent the indefinite commitment of defendants on competency grounds alone:

> "[A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he

will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal." 406 U.S. at 738.

Thus, *Jackson* dictates that a defendant held *solely* on account of his or her incompetency to stand trial may remain in limbo only for "the reasonable period of time necessary to determine whether there is a substantial probability that he will attain [competency] in the foreseeable future" and "continued commitment must be justified by progress toward that goal." 406 U.S. at 738. However, the *Jackson* court declined to "prescribe arbitrary time limits," leaving the states to wrestle with the nebulous reasonable time standard. 406 U.S. at 738; see also *State v. Rotherham*, 122 N.M. 246, 264, 923 P.2d 1131 (1996) ("Significantly, the Supreme Court in *Jackson* did not articulate a hard and fast time limitation on commitment to attain competency, requiring only that commitment be for a 'reasonable period of time.'"). Alternatively, *Jackson* instructs that a state may continue to detain an incompetent defendant without offending due process if it affords the defendant the protections of a lawful "civil commitment proceeding." 406 U.S. at 738.

In 1970, the Kansas Legislature first codified the competency statutes, K.S.A. 1970 Supp. 22-3301 et seq., which required a district court to suspend criminal proceedings when it had reason to believe a defendant was not competent to stand trial. L. 1970, ch. 129, § 22-3302. At that time, the competency statutes did not prohibit the State from indefinitely holding an incompetent defendant outside the bounds of civil commitment. But soon after *Jackson*, the Legislature revamped the competency statutes in an apparent effort to comply with that decision. See L. 1977, ch. 121, § 2. To this end, the Legislature imposed statutory deadlines that serve as benchmarks to determine whether a reasonable time to restore a defendant's competency under *Jackson* has

10

expired. See K.S.A. 22-3303 (Ensley 1981); *State v. Ray*, 429 Md. 566, 570, 57 A.3d 444 (2012) (statutory deadlines "provide yardsticks for determining the reasonable amount of time necessary to determine if a defendant is restorable" under *Jackson*). If, after the expiration of these deadlines, the defendant has no "substantial probability of attaining competency to stand trial in the foreseeable future," then the district court must order the commencement of involuntary commitment proceedings under the Care and Treatment Act. K.S.A. 2017 Supp. 22-3303.

Importantly, Snyder does not argue the Kansas competency statutes are facially unconstitutional under *Jackson*. Instead, he argues the State has run afoul of *Jackson* by holding him indefinitely only on account of his incompetency to stand trial. But in *Jackson*, the defendant's due process rights were violated because the state of Indiana did not subject him to the same civil commitment procedures as other citizens. Here, Snyder has been lawfully civilly committed. See *In re Care & Treatment of Snyder*, ___ Kan. ___, Syl. ¶ 3. And he points us to no statutory violation that amounts to a due process violation. Our analysis is limited to the arguments presented and the spotty record before us. Because we see no *Jackson* violation—indeed, our statutory scheme complies with *Jackson*—we find no due process violation on the present showing.

But we take this opportunity to voice our grave concern that the State has not given this case the careful attention it deserves. We remind the State that civil commitment is a "significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979); see *In re Care and Treatment of Sykes*, 303 Kan. 820, 824, 367 P.3d 1244 (2016). Yet, when the Saline County District Court ordered the State to initiate civil commitment proceedings against Snyder in November 2016, the State waited for *three months* to do so—until *after* Snyder filed a habeas action in this court. This lackadaisical response to a court order— while Snyder's liberty hung in the balance—is unacceptable. Because Snyder does not cite this delay as a basis for his constitutional claims, we are not prepared today to say it

11

violated due process. But given the serious liberty interests at stake, we expect the State to handle cases such as this one with the utmost expediency. In the words of the New Mexico Supreme Court:

> "[A]n incompetent defendant cannot be committed for more than a 'reasonable period of time' than necessary to determine whether he will be rendered competent to stand trial in the foreseeable future. *Jackson,* 406 U.S. at 733, 92 S. Ct. at 1855-56. Our Legislature adopted a system of hearings, complete with time limitations, to ensure that a defendant's commitment is no longer than a 'reasonable period of time.' Thus, it would be contrary to the statute's objective, and indeed the constitution, to allow these time limitations to be ignored. The inevitable result would be commitment for a period longer than what the Legislature has deemed reasonable. Hence, the State has the responsibility to ensure that a defendant's commitment is no longer than 'reasonable' and that all statutory procedures are timely effectuated." *Rotherham*, 122 N.M. at 264.

We also emphasize that Snyder has now been ping-ponged between competency detainment and civil commitment at least twice, though the record strongly suggests that Snyder's chances of becoming competent are "minimal, if not nonexistent." *Jackson*, 406 U.S. at 727. The competency statutes were designed to protect against *Jackson* violations. But due process cannot tolerate our statutory scheme being used as a mere façade to conceal the very problem *Jackson* sought to correct. Though today's case has not yet reached that point, the State cannot deliver the due process guaranteed our citizens by indefinitely alternating the detainment of an individual between criminal competency restoration and civil commitment.

### 3. Snyder's equal protection claim is abandoned.

Finally, Snyder argues that indefinite detainment on account of his incompetency to stand trial denies him equal protection by penalizing him for his intellectual disability. However, Snyder simply presses the point "without pertinent authority, or without

12

showing why it is sound despite a lack of supporting authority" which is "akin to failing to brief an issue." *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 15, 61 P.3d 68 (2002). Snyder's failure to adequately brief his equal protection claim renders it abandoned. See *State v. Angelo*, 306 Kan. 232, 236, 392 P.3d 556 (2017); *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015) (finding "sparse" briefing rendered issue abandoned).

Snyder's petition for habeas relief is denied.