761 A.2d 885

Bonnie ROBERTS a/k/a Bonnie Iqbal–Perbaksh
a/k/a Bonnie Elaine Singington

v.

STATE of Maryland.

No. 20, Sept. Term, 2000.

Court of Appeals of Maryland.

Nov. 8, 2000.

348

George E. Burns, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Rachel Marblestone Kamins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

CATHELL, Judge.

Petitioner, Bonnie Roberts A/K/A Bonnie Iqbal–Perbaksh A/K/A Bonnie Elaine Singington,[1] was charged with first degree murder and related offenses in the death of Dr. Stephen Olowu. Prior to the trial, petitioner, through her attorney, filed a Motion to Request Mental Examination, which the trial court denied without a hearing. A jury, sitting in the Circuit Court for St. Mary's County, convicted her of second degree murder and use of a handgun in the commission of a felony. She was sentenced to consecutive terms of imprisonment of twenty and ten years respectively. Petitioner appealed to the Court of Special Appeals, which affirmed her convictions in an unreported decision.[2] She presents two questions, for which we have granted a writ of certiorari:

1. Did the trial Court err in denying, without a hearing, a motion for examination of the defendant for competency to stand trial where the motion included a proffer sufficient to overcome the presumption of competency?

2. Did the Court of Special Appeals err in finding a failure to preserve the issue and that the trial judge was correct in applying the "Hillmon Doctrine"?

---

1. Petitioner has been known under numerous aliases.

2. The questions presented to the Court of Special Appeals were:
 1. Did the trial court err in denying Appellant's motion for a competency evaluation?
 2. Did the trial court err in admitting prejudicial testimony?
 3. Did the trial court err in overruling the objections and denying the mistrial made in response to arguments made by the prosecutor during closing argument?

We answer the first question in the affirmative. We therefore reverse the decision of the Court of Special Appeals and remand the case to that court with instructions to vacate the judgment of the Circuit Court for St. Mary's County and remand the case to that court for a new trial. Because we answer petitioner's first question in the affirmative and accordingly vacate the decision of the trial court, it is unnecessary for us to address petitioner's remaining question.

## I. Facts and Background

The facts of the underlying case are as bizarre as they are tragic. The basic facts are as follows: (1) on July 28, 1996, Dr. Stephen Olowu was found dead in petitioner's home on St. George's Island; (2) the cause of death was determined to be "a single, close-range, through-and-through gunshot wound [to the] chest"; and (3) the gun used in the shooting belonged to petitioner and, according to some accounts, was found lying in the victim's hand. During the trial, the defense counsel argued that Dr. Olowu must have accidently shot himself while cleaning the gun, while the State contended that petitioner murdered Dr. Olowu and staged the crime scene to look like an accident. The following is a summary of witness testimony.

On the morning of July 28, 1996, Mr. Joseph Vernon Moore [3] drove to petitioner's house on Thomas Road on St. George's Island in Piney Point, Maryland to collect payment for cutting grass. Petitioner came out the rear door of her home and talked with Joseph Moore. After a brief conversation, Joseph Moore left the premises and returned approximately fifteen to twenty minutes later with his brother, Mr. Charles R. Moore. Upon their return, petitioner again exited the house through the rear door and proceeded to write them a check for $100 for cutting the grass on her property.

---

3. Joseph Vernon Moore is referred to throughout the trial transcripts and record as Joseph Moore, Amos Moore, and Vernon Moore. For the sake of clarity, we will refer to him as Joseph Moore.

Petitioner then entered the house to get a second check to compensate the brothers for future lawn care.

Within one to two minutes, petitioner exited the house again and asked Joseph Moore to come into the house. He testified that:

> And she come out of the back, come to the back door, and she said, Vernon, come here a minute. I said what's the matter. Well, just come here. Well, the woman was just acting like she was going out of her mind, to my opinion. Just so upset, you know. And I still didn't know, I thought the dog had bit her.

Joseph Moore continued to describe Ms. Roberts demeanor in his testimony:

> All I saw her do was crying. . . . She acted terrible, just like she's, like, you know, like the world blowed up. Very, very upset. . . . She said—one word she said, "I'm so sorry" about twelve times I guess. "I'm so sorry, I'm so sorry."

Joseph Moore further testified that he followed petitioner into the house where he saw a man lying on the floor. As he approached the victim's body, he noticed a gun and two "piles" of "purple, bluish" blood.

The Moore brothers then went across the street to Ms. Sumali Hinckley and Mr. Joseph W. Suchinsky's house to call for help. When they arrived, they explained to both Ms. Hinckley and Mr. Suchinsky that there was an emergency at petitioner's house. Mr. Suchinsky testified that the time was approximately 1:00 to 1:30 p.m. He then dialed 911, reported the shooting, and the four of them proceeded to petitioner's house. Mr. Suchinsky testified that upon arriving at petitioner's house "you could see that [petitioner] was emotionally disturbed" and that petitioner "was leaning over, holding onto the railing of the porch, and her knees seemed to be buckling." Ms. Hinckley testified that when she arrived at petitioner's house, petitioner was sweaty and nervous. When petitioner asked for a glass of water, Ms. Hinckley entered petitioner's house to get a glass of water and saw the bloodied victim

laying on the floor. Immediately thereafter, Mr. Suchinsky entered the house to get petitioner a chair and also saw the victim.

Ms. Hinckley and Mr. Suchinsky testified that they recognized the dead man laying on the floor of petitioner's house. Both of them recalled seeing petitioner and the victim at petitioner's house emptying groceries out of a red jeep the previous afternoon at approximately 4:00 p.m. Ms. Hinckley also remembered seeing the victim again on Sunday, July 28, 1996, at approximately 10:30–11:00 a.m. on petitioner's property.

Shortly thereafter, three separate emergency response personnel arrived.[4] All three testified that when they entered the home they found the bloodied victim laying on the floor. Collectively, they noted that: (1) there was a large quantity of blood on the floor and on the victim; (2) the blood had soaked through both the rug the victim was laying on and his shirt; (3) that the blood was a dark red and purplish color and was no longer flowing from the victim; (4) the victim's body was cold to the touch, although it was quite warm in the house; and, (5) there was a gun and gun cleaning rod laying in the vicinity of the victim. The general consensus among the three gentlemen was that the victim was already dead when they arrived on the scene.[5]

Testimony concerning crime scene analysis was provided by John M. Roeder, a crime lab technician with the St. Mary's County Sheriff's Department, and Joseph Kopera, a firearms,

---

4. Mr. Kenneth E. Shepard, a member of the Valley Lee Fire Department, responded to the scene within minutes of the call; Corporal Edward Willenborg, of the St. Mary's County Sheriff's Department, arrived at the scene at approximately 2:30 p.m.; and Harry Koehler, an ambulance attendant, arrived at the scene at approximately 2:35 p.m.

5. Apparently, during the trial, there was debate as to exactly when the victim was shot. Joseph Moore testified that he did not hear a gunshot while he was waiting in petitioner's yard. In June 1998, in order to determine whether a gunshot would have been heard, the weapon was test fired in petitioner's home. It was heard outside by both Joseph Moore and Officer John Horne.

tool mark, ballistics expert with the Maryland State Police Crime Lab. Mr. Roeder, who arrived on the scene between 3:00 and 3:30 p.m., testified that "[t]he weapon was laying in the hand. It looked like it had either—it could have either fallen into the hand or it could have been placed in the hand." Mr. Roeder also testified that he conducted a gunshot residue test[6] on the victim that was inconclusive.

The trial court accepted Mr. Kopera as an expert in the field of ballistics, firearm identification, and gunpowder residue. He described the weapon found in the victim's hand as a .380 caliber Beretta semiautomatic pistol.[7] He testified that the gun had no defects and that the spent bullet and cartridge casing found at the scene had been fired from the gun. When discussing the gun's safety features, he testified that the gun had a hammer block, and that it would not fire without a magazine inserted. Additionally, it would not discharge if dropped. He concluded that the gun had been perpendicular to the victim when it was fired. Mr. Kopera also examined the shirt taken from the victim. He detected gun powder residue on the shirt, however, he concluded that because the shirt did not have a hole in it, that the shirt must have been open at the time of shooting. Based on this powder residue, Mr. Kopera determined that the gun was six to twelve inches from the shirt when fired but that the actual distance from the victim would have depended on how the shirt was being worn. His rationale was supported by testimony from Dr. Margarita A. Korell, Assistant Medical Examiner from the Office of the Chief Medical Examiner in Baltimore City. She testified that stippling[8] on the victim's skin indicated that the weapon was fired from a close range. Although she was unable to deter-

---

**6.** During his testimony, Mr. Roeder described a gunshot residue test as "a test using chemicals to see if a person had fired a weapon."

**7.** It was stipulated at trial that petitioner purchased the handgun in 1985 and the gun cleaning kit on the weekend of the shooting.

**8.** Dr. Korell testified that "[s]tippling is burned and unburned powder that sticks to the target if the gun is shot close enough to the target."

mine the time of death, she thought that the victim only survived "a minute or so" after the shooting.

Ms. Shari Jones testified that she had been involved in a relationship with the victim, Dr. Owolu, since 1993, that they lived in Connecticut together, and that he was the father of her child. Ms. Jones further testified that she had received a call from petitioner on June 26, 1996, in which the stated purpose of the call was to confirm the existence of Shari Jones. In that conversation, petitioner stated that "she was [Dr. Olowu's] wife and that she wasn't going to, you know, just go away. That she had rights, that she was going to exercise these rights." Ms. Jones also testified that the victim told her a few days prior to his death that he wanted to go to Maryland to tell petitioner that their relationship was "over" and "that she would have to leave him alone." He left telling Ms. Jones that he would be back on Saturday. Ms. Jones further testified that she was not aware that July 28 was petitioner's birthday or that the victim was going to St. George's Island with petitioner.

## II. The Trial

Petitioner was subsequently arrested and brought to trial for the murder of Dr. Owolu. On February 25, 1999, prior to the first motions hearing, petitioner's attorney filed a Motion to Request Mental Examination with the Circuit Court for St. Mary's County. The motion provided:

1. Ms. Roberts has had a long history [of] Psychiatric problems. Although there has been no history of any violence on her part, Ms. Roberts had been evaluated and treated by a number of physicians and found not to be competent.

2. Counsel has been in communication with her physicians and her former attorney who reside and practice within the Washington [D.C.] area. The information counsel has received from the aforementioned individuals raises a question as to the issue of competency. Although counsel has had, and continues to have, difficulty communicating with Ms. Roberts, it appears that her memory for recent

and remote events seems somewhat mixed. Her judgment and insight appear unclear at this time.

3. Both of Ms. Roberts' physicians believe that she should be placed in a psychiatric hospital where she can receive adequate treatment. However, since she has been housed at the St. Mary's County Detention Center, Ms. Roberts, through counsel[,] asks this Court to issue an order that she be evaluated by a suitable licensed or certified examiner at the expense of the [S]tate.

4. Counsel believes that this examination is very necessary and should be done as soon as possible since the trial in this case is scheduled to begin on March 30, 1999. If the Court believes that a hearing on the issue of competency is necessary or if any additional information is required, counsel would be more than happy to provide same.

The very next day, the State filed an answer to this motion. Relevant to the case at bar, it argued:

2. That the preliminary threshold of mental incompetency has not been properly raised by the Defendant in that the Defendant has not entered a plea of not criminally responsible by reason of insanity; neither has the Defendant provided or released to the State any medical and/or psychological or psychiatric reports in support of her allegations.

3. That the Defendant has filed a Motion for Mental Examination at the expense of the State rather than a plea of not criminally responsible by reason of insanity and does not comply with the requirements of Rule 4–242.

4. That the Defendant's motion in essence seeks to improperly shift upon the Court the onus of raising *sua sponte* the issue of mental competency.

5. That at no time has the Defendant been adjudicated not criminally responsible by reason of insanity by the State of Maryland or by any other jurisdiction.

6. That pursuant to Rule 4–242 a plea of not criminally responsible by reason of insanity shall be in writing and

entered at the time the Defendant initially pleads unless good cause is shown. [Citations omitted.]

The trial court denied the motion on the very next day without a hearing.[9] A trial on the merits commenced on March 30, 1999. On April 6, 1999, the jury found petitioner guilty of second degree murder and use of a handgun in the commission of a felony. She was sentenced to consecutive terms of imprisonment of twenty and ten years. Petitioner appealed to the Court of Special Appeals, which affirmed her conviction in an unreported decision.

## III. Analysis

The issue before us is whether the trial court erred in denying, without a hearing, a motion for examination of the defendant for competency to stand trial where the motion included a proffer sufficient to overcome the presumption of competency. We hold, under the circumstances of this case, that the trial court erred in not holding a hearing providing an opportunity for petitioner to present evidence in respect to whether to refer her for a competency evaluation to be used in making a competency determination. Once an accused alleges incompetency to stand trial, a trial court is required to make a determination as to the accused's competency to stand trial *based on the evidence on the record.* While we do not say that a formal hearing on the merits is required in all circumstances, especially where the allegation of incompetency is a bald one unsupported by any alleged facts that, if true, would demonstrate such incompetency, we do hold that when a defendant makes an allegation of incompetency to stand trial and there is *no evidence in the record* as to the defendant's incompetency to stand trial, as opposed to a proffer, an accused must be afforded an opportunity to present evidence upon which a valid determination can be made. Although the trial court had no automatic obligation to grant petitioner's

---

9. The order signed by the trial judge stated that in rendering its decision, the court merely "read and carefully considered the Motion to Request Mental Examination filed by the Defendant and the Answer thereto filed by the State...."

motion and order a mental examination upon her proffer, once petitioner's competency to stand trial was called into question, as it was by this motion, the trial court then had an affirmative duty to determine petitioner's competency based on *evidence in the record.* Under the facts of this case, the trial court had no basis for finding that examination was or was not necessary because, at the time the issue of petitioner's competency was raised, there was *no evidence in the record* upon which a determination could be made. Therefore, under the circumstances in the case *sub judice*, a hearing to permit the introduction of evidence, or some other method of receiving evidence, was required in order for the trial court to make a valid determination of competency as required by Maryland Code (1982, 2000 Repl.Vol.), section 12–103 of the Health–General Article.

### a. Competency v. Not Criminally Responsible

Before starting our analysis of the issue at hand, we feel that it is imperative that we once again clarify the distinction between competency to stand trial and responsibility for a criminal act. In its answer to the trial court, the State argued that the preliminary threshold of mental incompetency was not properly raised by petitioner because she had not entered a plea of not criminally responsible by reason of insanity. This is an improper interpretation of the law of Maryland. As the Court of Special Appeals has said "[t]he sole issue of competency to stand trial is not raised by a plea and its determination is a matter resting exclusively in the court." *Strawderman v. State*, 4 Md.App. 689, 695, 244 A.2d 888, 891 (1968) (footnote omitted), *cert. denied*, 155 Md. 733 (1969).

Maryland Code (1982, 2000 Repl.Vol.), section 12–101(e) of the Health–General Article states that:

"Incompetent to stand trial" means not able:

(1) To understand the nature or object of the proceeding; or

(2) To assist in one's defense.

**358**

Contrastingly, Maryland Code (1982, 2000 Repl.Vol.), section 12–108(a) of the Health–General Article provides that:

> A defendant is not criminally responsible for criminal conduct if, at the time of that conduct, the defendant, because of a mental disorder or mental retardation, lacks substantial capacity:
>
> (1) To appreciate the criminality of that conduct; or
>
> (2) To conform that conduct to the requirements of law.

Comparing these two statutes, it is evident that although they encompass similar topic areas, the Legislature intended them to be distinct and unique. "Prior to the enactment of chapter 709, Laws of Maryland, 1967 . . . the Maryland courts had applied the same standard for both insanity at the time of commission of the crime and 'insanity' at the time of trial. . . ." [10] *Raithel v. State,* 280 Md. 291, 297–98, 372 A.2d 1069, 1073 (1977). *See* Md. Code (1957, 1964 Repl.Vol.), Art. 59 § 7. The enactment of 1967 Maryland Laws, Chapter 709 codified a distinction between the two standards. *See* Md. Code (1957, 1964 Repl.Vol., 1967 Cum.Supp.), Art. 59 § 7; *Raithel,* 280 Md. at 297, 372 A.2d at 1073. It is evident that whether an accused enters a plea of not criminally responsible has no bearing on the accused's competency to stand trial. As we indicated in *Jolley v. State,* 282 Md. 353, 373, 384 A.2d 91, 102 (1978), a case in which we recognized that an accused could be competent to stand trial as well as not criminally responsible, "the test for competency to stand trial and the test for criminal responsibility at the time of the commission of the offense [are] separate and distinct." Therefore, the State's assertion that the preliminary threshold of mental incompetency was not properly raised by petitioner because she had not entered a plea of not criminally responsible by reason of insanity was simply wrong.

---

**10.** In Maryland, the two terms are now referred to as criminally responsible at the time of the commission of the crime and competency at the time of trial, respectively.

### b. Determination of Competency

The Supreme Court of the United States has said that "[i]t is well established that the Due Process Clause of the Fourteenth Amendment [to the United States Constitution] prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v. California,* 505 U.S. 437, 439, 112 S.Ct. 2572, 2574, 120 L.Ed.2d 353 (1992); *see Drope v. Missouri,* 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."); *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966) ("[T]he conviction of an accused person while he is legally incompetent violates due process...."); *Trimble v. State,* 321 Md. 248, 254, 582 A.2d 794, 797 (1990) ("If a state fails to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent, it denies him due process."); *see also Ware v. State,* 360 Md. 650, 759 A.2d 764 (2000). In accordance with this principle, Maryland Code (1982, 2000 Repl. Vol.), section 12–103 of the Health–General Article [11] provides:

§ 12–103. Court determination of competency.

(a) *Hearing.*—If, before or during a trial, the defendant in a criminal case appears to the court to be incompetent to stand trial *or the defendant alleges incompetence* to stand trial, the court shall determine, *on evidence* presented *on the record,* whether the defendant is incompetent to stand trial.

(b) *Court action if defendant competent.*—If, after receiving evidence, the court finds that the defendant is competent to stand trial, the trial shall begin as soon as practicable or, if already begun, shall continue.

---

**11.** Any future reference to section 12–103 is merely an abbreviated form of Maryland Code (1982, 2000 Repl.Vol.), section 12–103 of the Health–General Article.

(c) *Reconsideration of competency.*—At any time during the trial and before verdict, the court may reconsider the question of whether the defendant is incompetent to stand trial. [Some emphasis added.]

We begin our analysis with a discussion of statutory construction. As we have stated numerous times:

We have said that "[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423, 429 (1995). Legislative intent must be sought first in the actual language of the statute. *Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 444–45, 697 A.2d 455, 458 (1997); *Stanford v. Maryland Police Training & Correctional Comm'n*, 346 Md. 374, 380, 697 A.2d 424, 427 (1997) (quoting *Tidewater v. Mayor of Havre de Grace*, 337 Md. 338, 344, 653 A.2d 468, 472 (1995)); *Coburn v. Coburn*, 342 Md. 244, 256, 674 A.2d 951, 957 (1996); *Romm v. Flax*, 340 Md. 690, 693, 668 A.2d 1, 2 (1995); *Oaks*, 339 Md. at 35, 660 A.2d at 429; *Mauzy v. Hornbeck*, 285 Md. 84, 92, 400 A.2d 1091, 1096 (1979); *Board of Supervisors v. Weiss*, 217 Md. 133, 136, 141 A.2d 734, 736 (1958). Where the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts normally do not look beyond the words of the statute to determine legislative intent. *Marriott Employees*, 346 Md. at 445, 697 A.2d at 458; *Kaczorowski v. Mayor of Baltimore*, 309 Md. 505, 515, 525 A.2d 628, 633 (1987); *Hunt v. Montgomery County*, 248 Md. 403, 414, 237 A.2d 35, 41 (1968).

. . . .

This Court recently stated that "statutory language is not read in isolation, but 'in light of the full context in which [it] appear[s], and in light of external manifestations of intent or general purpose available through other evidence.'" *Stanford v. Maryland Police Training & Correctional Comm'n*, 346 Md. 374, 380, 697 A.2d 424, 427 (1997) (alterations in original) (quoting *Cunningham v. State*, 318 Md. 182, 185, 567 A.2d 126, 127 (1989)). To this end,

[w]hen we pursue the context of statutory language, we are not limited to the words of the statute as they are printed.... We may and often must consider other "external manifestations" or "persuasive evidence," including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.

... [I]n *State v. One 1983 Chevrolet Van,* 309 Md. 327, 524 A.2d 51 (1987), ... [a]lthough we did not describe any of the statutes involved in that case as ambiguous or uncertain, we did search for legislative purpose or meaning—what Judge Orth, writing for the Court, described as "the legislative scheme." [*Id.* at] 344–45, 524 A.2d at 59. We identified that scheme or purpose after an extensive review of the context of Ch. 549, Acts of 1984, which had effected major changes in Art. 27, § 297. That context included, among other things, a bill request form, prior legislation, a legislative committee report, a bill title, related statutes and amendments to the bill. *See also Ogrinz v. James,* 309 Md. 381, 524 A.2d 77 (1987), in which we considered legislative history (a committee report) to assist in construing legislation that we did not identify as ambiguous or of uncertain meaning.

*Kaczorowski,* 309 Md. at 514–15, 525 A.2d at 632–33 (some citations omitted).

*State v. Bell,* 351 Md. 709, 717–19, 720 A.2d 311, 315–16 (1998).

Section 12–103 has its origins in 1967 Maryland Laws, Chapter 709, which served to help modernize the laws concerning, among other matters, competency and insanity issues. Md.Code (1957, 1964 Repl.Vol., 1967 Cum. Supp.), Article 59, section 7 contained language similar to that used in section 12–103's present form. 1970 Maryland Laws, Chapter 407 § 2 moved Article 59, section 7 to Article 59, section 23 without substantive change. 1982 Maryland Laws, Chapter 21 recodi-

fied Article 59, section 23 to Maryland Code (1982), section 12–102 of the Health–General Article. 1984 Maryland Laws, Chapter 501 created a new 12–102 entitled "Rules and regulations" and moved the "Court determination of competency" statute to its current location at section 12–103, without substantive change. In *Sangster v. State,* 312 Md. 560, 568–69, 541 A.2d 637, 641 (1988), we discussed the successive legislative history of relevant portions of Title 12 in substantial detail:

Present H–G § 12–103 is part of a revision of Title 12 of the Health General Article resulting from the work of The Governor's Task Force to Review the Defense of Insanity. That revision was enacted by Ch. 501 of the Acts of 1984.[12] The task force comment to § 12–103 reflects that it replaces Md.Code (1982), H–G § 12–102 without substantive change.

Code (1982), H–G § 12–102(a), which likewise spoke of "evidence presented on the record," was part of the new Health–General Article enacted by Ch. 21 of the Acts of 1982. The Revisor's Note to Code (1982), H–G § 12–102 states that "[this section is new language derived without substantive change from the first, eighth, and ninth sentences of former Article 59, § 23.]" That note also advises that "[i]n subsections (a) and (b) of this section, the former references to 'testimony' are deleted as unnecessary in light of the broad references to 'evidence'."

Former Art. 59, § 23 in relevant part provided:

---

12. 1984 Maryland Laws, Chapter 501 originated as Senate Bill 645 of 1984. Senate Bill 645's bill file included a Senate Judicial Proceedings Committee Bill Analysis, which described the then current law as:

Before or during a trial, if the defendant in a criminal case appears to the court to be incompetent to stand trial or the defendant alleges incompetence to stand trial, the court *must determine at a hearing on the record* whether the defendant is incompetent to stand trial. [Emphasis added.]

The Bill Analysis went on to state that the only substantive changes made by Bill 645 was concerned the requiring of certain types of information in the central repository of the criminal justice information system. "All other changes are stylistic only and do not substantively affect the law."

Whenever prior to or during the trial, any person charged with the commission of any crime shall appear to the court, or be alleged to be incompetent to stand trial, by the defendant himself, the court shall determine upon testimony and evidence presented on the record whether such person is [incompetent]. . . . Whenever any defendant shall be referred to the Department of Mental Hygiene for an examination of his competency to stand trial under this section, he shall be examined and a full and complete report of findings shall be forwarded to the court having jurisdiction over the defendant, to the State's attorney and to counsel for the defendant within the time specified . . . below. If the court after receiving testimony and evidence determines that the defendant is competent . . . the trial shall commence as soon as practicable or, if already commenced, shall continue. [Md.Code (1957, 1979 Repl.Vol.), Art. 59, § 23.]

The above-quoted language was enacted by Ch. 709 of the Acts of 1967 which substantially revised provisions of Art. 59 when it was entitled "Lunatics and Insane." [Alterations in original.]

It is evident through an analysis of the evolution of section 12–103, that the Legislature, in order to protect the accused's due process rights, intended to mandate precise actions to be taken by a trial court when an accused's competency to stand trial was questioned.

We now turn our attention to the precise wording of section 12–103. The plain meaning of this statutory provision is evident from its unambiguous wording. First and foremost, section 12–103 is entitled "Court determination of competency" and subsection 12–103(a) is entitled "Hearing." [13] From the titles alone it is strikingly obvious that the Legislature envisioned a need for a Court determination of competency and required that, in Maryland, such a determination general-

---

13. 1982 Maryland Laws, Chapter 21 served to codify this language.

ly can be accomplished through a hearing on the issue of competency.

■■■ The language of 12–103(a) mandates actions to be undertaken by a trial court, if an accused's competency is properly called into question. These actions can be broken down into three distinct and simple steps: (1) First, a determination of competency may be made at any time before or during a trial; (2) Second, such a determination must be made if the defendant in a criminal case appears to be incompetent to stand trial or the defendant alleges incompetence to stand trial; and (3) Finally, the court must make its determination on the evidence presented on the record.

■■■ The first step specifies the time frame within which the question of an accused's competency must be made. Quite simply, the issue can be presented at any time before or during a trial. Once an initial determination of competency has been made, a reconsideration of the accused's competency may be made and is controlled by the discretionary language of section 12–103(c). *See Stewart v. State*, 65 Md.App. 372, 377, 500 A.2d 676, 678 (1985) ("The language [of 12–103(c) ] is clear that a reconsideration of competency is discretionary. There are no requirements for an *additional* hearing to make findings of fact and conclusions of law.") (emphasis added), *cert. denied*, 305 Md. 599, 505 A.2d 856 (1986).

■■■ The second step is more complicated. First, it provides guidance as to when a need for such a determination is triggered. We interpreted this provision in *Thanos v. State*, 330 Md. 77, 85, 622 A.2d 727, 730 (1993) when we said:

As the statute makes plain, a trial court's duty to determine the competency of the accused is triggered in one of three ways: (1) upon motion of the accused; (2) upon motion of the defense counsel; or (3) upon a *sua sponte* determination by the court that the defendant may not be competent to stand trial. *See Johnson v. State*, 67 Md.App.

347, 507 A.2d 1134 (1986).[14]

The second step also creates a mandate from the Legislature to the trial judge. If the court's duty to determine the competency of the accused to stand trial has been triggered, "the court *shall determine* ... whether the defendant is incompetent to stand trial." Section 12–103(a) (emphasis added). We, as well as the Court of Special Appeals, have had many opportunities to consider the mandatory language of Section 12–103(a). *See Trimble,* 321 Md. at 255, 582 A.2d at 797–98 (the mandatory nature of section 12–103(a) requires that, once a defendant's competency is in question, a trial court shall hear evidence regarding defendant's competency in order to determine whether defendant is competent to stand trial); *Morrow v. State,* 293 Md. 247, 256, 443 A.2d 108, 113 (1982) ("In the instant case the trial court completely complied with the requirements of Article 59, § 23 and the mandates of due process. When Morrow alleged he was incompetent the court conducted a pretrial hearing on the matter, where expert testimony was heard. ..."); *Johnson v. State,* 67 Md. App. 347, 358–59, 507 A.2d 1134, 1140 (stating that it is a mandatory duty of the trial court to determine the competency of an accused to stand trial when it is triggered), *cert. denied,* 307 Md. 260, 513 A.2d 314, *cert. denied,* 479 U.S. 993, 107 S.Ct. 594, 93 L.Ed.2d 595 (1986); *Stewart,* 65 Md.App. at 376–77, 500 A.2d at 678 (the initial determation of competency when the issue is properly raised is mandatory in nature), *cert. denied,* 305 Md. 599, 505 A.2d 856 (1986); *Hill v. State,* 35 Md.App. 98, 102–03, 369 A.2d 98, 101 (1977) (It is "plain that § 23 mandated special procedural action and necessary substantive determination by the trial court when an accused is 'alleged to be incompetent to stand trial.' "). The mandatory

---

14. The State contends that petitioner's proffer of evidence of incompetency was not enough to overcome a presumption of competency; *i.e.,* that the need for a competency determination had not been triggered. We disagree. As is evident from both the wording of, and our prior interpretation of section 12–103(a), a defendant merely needs to appear incompetent or allege incompetence in order to trigger the need for a competency determination.

language of 12–103(a) indicates that the Legislature intended for every accused, whose competency was called into question, to have at least one guaranteed review of his or her competency status.

The third and final step requires that the determination of competency be done "on evidence presented on the record." As we have said, "the determination [of competency] is not one to be made lightly but upon testimony and evidence on the record." *Treece v. State*, 313 Md. 665, 682, 547 A.2d 1054, 1063 (1988); *see Sangster*, 312 Md. at 573, 541 A.2d at 643 (holding that a report ordered by the trial court is evidence on the record); *Jolley*, 282 Md. at 365, 384 A.2d at 98 ("It was the duty of the trial court to 'determine upon testimony and evidence presented on the record' whether Jolley was competent to stand trial in the contemplation of Art. 59, § 23."). We view the Legislature's inclusion of such language as a clear indication that it intended the determination of competency to be essential in preserving an accused's due process rights and that such rights could only be preserved if the determination was made on evidence presented on the record.

This contention is further supported by a review of section 12–103(b). Section 12–103(b) dictates a court's action after a finding of competency. Subsection (b) provides:

> If, *after receiving evidence,* the court finds that the defendant is competent to stand trial, the trial shall begin as soon as practicable or, if already begun, shall continue. [Emphasis added.]

The express wording of subsection (b) clearly states that a finding of competency under the competency determination mandated by subsection (a) can only exist "after receiving evidence." Thus, a determination of competency made without an opportunity for evidence to be presented would be invalid.

We and the Court of Special Appeals have further recognized that the competency determination is to be held to a standard of beyond a reasonable doubt. *See Treece*, 313 Md. at 682–83, 547 A.2d at 1063 ("[T]he determination that a

defendant is competent must be beyond a reasonable doubt."); *Jolley,* 282 Md. at 365, 384 A.2d at 98 ("A determination that an accused is competent to stand trial must be found beyond a reasonable doubt."); *Raithel,* 280 Md. at 297, 372 A.2d at 1072 ("[T]he issue of competency is to be determined by the court, which must find beyond a reasonable doubt that the accused is competent to stand trial."); *Langworthy v. State,* 46 Md.App. 116, 129, 416 A.2d 1287, 1294 (1980) ("[T]he hearing required by Art. 59, § 23, once competency is a genuine issue in the case, is a hearing at which the trial judge must be satisfied beyond a reasonable doubt that the defendant is competent before the defendant may be required to go forward and stand trial."), *cert. denied,* 450 U.S. 960, 101 S.Ct. 1419, 67 L.Ed.2d 384 (1981); *see also Hill v. State,* 35 Md.App. 98, 102, 369 A.2d 98, 100–01 (1977); *Colbert v. State,* 18 Md.App. 632, 641, 308 A.2d 726, 731, *cert. denied,* 269 Md. 756 (1973); *Rozzell v. State,* 5 Md.App. 167, 175, 245 A.2d 917, 922 (1968), *cert. denied,* 252 Md. 732 (1969); *Strawderman v. State,* 4 Md.App. 689, 697, 244 A.2d 888, 892 (1968), *cert. denied,* 155 Md. 733 (1969). It is clear from the language of section 12–103, in its entirety, as well as its legislative history, and our prior interpretation of the competency statute, that, once the issue of competency has been triggered, a trial court has an affirmative duty to determine an accused's competency on evidence presented on the record. Under circumstances, such as the facts of the case at bar, where there is *no evidence* on the record concerning petitioner's competency, a hearing to present evidence is appropriate to put evidence on the record from which a valid determination of competency can be made. As we said in *Jones v. State,* 280 Md. 282, 287, 372 A.2d 1064, 1067 (1977):

Although the statute [15] does not provide that a special or formal hearing be held to determine the competency of the accused to stand trial, it is unmistakably clear in its com-

---

**15.** In *Jones,* 280 Md. 282, 372 A.2d 1064, we were interpreting Maryland Code (1957, 1972 Repl.Vol.) Article 59, section 23, which as we have discussed, *supra,* was a precursor to section 12–103.

mand that the determination be made upon testimony and evidence presented on the record. *Hill v. State,* 35 Md.App. 98, 369 A.2d 98, 102 (1977); *Colbert v. State,* 18 Md.App. 632, 640–41, 308 A.2d 726, *cert. denied,* 269 Md. 756 (1973). The statute employs the word "shall" in regard to this requirement, and there is nothing in the context in which it is used to negate the mandatory intent which the word "shall" ordinarily imports. *See Blumenthal v. Clerk of Cir. Ct.,* 278 Md. 398, 408–09, 365 A.2d 279 (1976); *Bright v. Unsat. C. & J. Fund Bd.,* 275 Md. 165, 169–70, 338 A.2d 248 (1975); *Maryland St. Bar Ass'n v. Frank,* 272 Md. 528, 533, 325 A.2d 718 (1974).

Additionally, in *Colbert,* 18 Md.App. at 640–41, 308 A.2d at 731–32, *cert. denied,* 269 Md. 756 (1973) the Court of Special Appeals stated that:

The statute requires that the determination be made "upon testimony and evidence presented on the record", but it does not require that such testimony and evidence be presented in a separate hearing, as appellant contends. We said in *Strawderman,* at page 695 [244 A.2d 888], "Of course, in a jury trial, evidence with regard to it should be received out of the presence of the jury", but we did not say, nor do we now say, that a judge with no jury present is required to use any magic words to designate as a separate hearing the presentation to him of testimony and evidence for his determination of the competency of the accused to stand trial. It is sufficient if the testimony and evidence are on the record.

The clear difference in procedure is this: Although a defendant is presumed competent until the issue is raised, that presumption is overcome when it "shall appear to the court or be alleged" that he is incompetent to stand trial. The allegation may be made by the defendant himself, or by his counsel. When the original presumption is thus overcome there remains no presumption one way or the other. The issue raised must be determined by the court, which must find beyond a reasonable doubt that the defendant is competent to stand trial.

In the case *sub judice,* defense counsel triggered the requirement for a competency determination when he filed the Motion to Request Mental Examination. First, the motion was filed within the time limitations of section 12–103(a), in that it was filed before the trial. Second, the motion itself called petitioner's competency into question and overcame the presumption that petitioner was competent to stand trial.[16] Finally, the trial court's determination of competency was not made on evidence on the record, nor was any opportunity afforded for the presentation of such evidence.

In the case at bar, the trial court had no evidence upon which a determination of competency could be made beyond a reasonable doubt, nor did it afford the parties an opportunity to present evidence. There is no indication that the trial court had *any* evidence on the record at the time the issue of petitioner's competency was raised, upon which a determination of competency could be made. The issue of competency was triggered and the trial court failed to make a determination of competency based on evidence on the record as required by section 12–103(a). While the trial court may not have had a duty to grant petitioner's motion to request a mental examination or to actually order a mental examination,[17] the motion triggered the need for the trial court to

---

16. Petitioner's competency was questioned throughout the motion: "Ms. Roberts had been evaluated and treated by a number of physicians and found not to be competent.... The information counsel has received ... raises a question as to the issue of competency.... If the Court believes that a hearing on the issue of competency is necessary or if any additional information is required, counsel would be more than happy to provide same."

17. In Maryland, the law concerning the ordering of a mental examination is contained in Maryland Code (1984, 2000 Repl.Vol.), section 12–104 of the Health General Article, which provides:

§ 12–104. **Examination as to competence.**

(a) *Examination authorized.*—(1) For good cause and after giving the defendant an opportunity to be heard, the court may order the Department to examine the defendant to determine whether the defendant is incompetent to stand trial.

(2) The court shall set and may change the conditions under which the examination is to be made.

afford an opportunity for the presentation of evidence upon which its subsequent decision would be based. The trial court's failure to render a competency determination based on evidence on the record constitutes reversible error. As we said in *Jones,* 280 Md. at 289, 372 A.2d at 1068:

> Failure to determine competency "upon testimony and evidence presented on the record," as required by the statute, nullifies not only the determination itself, but also the trial and resulting conviction.

## Conclusion

 We hold that once the issue of competency is triggered, a trial court is required, under section 12–103, to make a determination *on evidence in the record,* whether the defendant is incompetent to stand trial. Although the statute does not require that a formal hearing on the merits of competency always be held, it does require that the determination be done based on evidence in the record. Thus, when a defendant appears to be incompetent to stand trial or the defendant alleges incompetence to stand trial, and there is *no evidence in the record* as to the defendant's competency to stand trial, there needs to be an opportunity to present evidence upon which a valid determination can be made. A

---

Unlike section 12–103, the language of section 12–104 is discretionary. The trial court may authorize a mental examination to determine competency, but it is not mandated by the Legislature to do so. As we said in *Sangster,* 312 Md. at 571, 541 A.2d at 642, the Legislature, by deleting certain language from the original bill,

> intended to eliminate any implication that the receipt of a report from the Department was a condition precedent or jurisdictional prerequisite for the circuit court to proceed to trial on the merits. . . . Thus today, under H–G § 12–103(a), if the defendant alleges incompetency, the court "shall" determine the issue, but under H–G § 12–104 the court "may" order an examination and report.

This section expressly requires that a defendant must have an "opportunity to be heard" if a trial court exercises its discretion to direct a mental evaluation. The opportunity to be heard mentioned in section 12–104 is the hearing provided for in section 12–103. For a more complete discussion of sections 12–103 and 12–104, and their relationship wit h federal statutes, *see generally, Sangster,* 312 Md. 560, 541 A.2d 637.

hearing for that purpose would ordinarily suffice. If an opportunity to be heard is afforded and no evidence is presented, the presumption of competency remains. Under the facts of this case, the trial court had no basis for finding that an examination was or was not necessary because, at the time the issue of petitioner's competency was raised, there was *no evidence in the record* upon which a determination could be made, nor was any opportunity afforded for the presentation of such evidence. Therefore, under the facts of the case *sub judice*, a hearing to introduce evidence would have been appropriate in order to enter evidence in the record upon which a determination of competency or the need for an evaluation could have been made.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR ST. MARY'S COUNTY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.